# ALLEN L. BROUGHTON, P.C.

**Attorneys at Law**
305 West Wieuca Road, N.E.
Atlanta, Georgia  30342

Telephone:     (404) 842-7700
Facsimile:      (404) 842-7717

alb@broughtonlaw.com
www.AtlantaTrialLawyers.com

Allen L. Broughton, P.C.
Licensed in Georgia & North Carolina

May 24, 2010

*VIA EMAIL and*
*CERTIFIED MAIL*

William J.W. Merritt, Esq.
Merritt & Tenney, LLP
Suite 500
200 Galleria Parkway
Atlanta, Georgia  30339

*VIA EMAIL and*
*CERTIFIED MAIL*

James F. Tenney, Esq.
Merritt & Tenney, LLP
Suite 500
200 Galleria Parkway
Atlanta, Georgia  30339

*VIA EMAIL and*
*CERTIFIED MAIL*

Lex A. Watson, II, Esq.
Merritt & Tenney, LLP
Suite 500
200 Galleria Parkway
Atlanta, Georgia  30339

Dear Messrs. Merritt, Tenney, and Watson:

As you know, this firm represents Elaine and Dean Pelton.  Although we have not received the insurance information requested, we are relying on your representation that your firm's policy affords $1,000,000.00 in coverage.

The facts underlying this event are among the most egregious I have ever seen.  Elaine, a ten year employee of your firm, suffered the most humiliating invasion of privacy imaginable.  A named partner in your firm is shown on video placing a spy camera under her desk, and the demeaning pictures of Elaine caught on camera will speak volumes to the jury.  Because the disgraceful behavior involved and obvious damages suffered are so evident, I will not belabor the point at this time.

The facts presently known are enough to present a compelling case to a jury.  Once suit is filed and depositions of the partners and employees of the firm begin, there are likely to be numerous additional facts discovered that will make the case even stronger.  While we anticipate it will be argued that Mr. Tenney was acting on his own in this matter, the environment that allowed this behavior to develop will be explored in detail, and it has been my experience that discovery in this matter will firmly support several claims of negligence – including but not limited to negligent retention – in addition to the other obvious state law tort claims.  When all is said and done, I do not believe the jury will look favorably upon the actions of either Mr. Tenney or his firm.

We will also present to the jury the apparent dichotomy in the firm's dealings with Mr. Tenney before, during, and after the spy camera came to light.  After the spy camera's discovery, and before Mr. Tenney's behavior was uncovered, the firm made a point to adamantly express



**EXHIBIT**

A

William J.W. Merritt, Esq.
James F. Tenney, Esq.
Lex A Watson, Esq.
May 24, 2010
Page 2

that no firm employee could ever be involved in such an act, let alone a named partner, and that the firm would do everything necessary to punish the perpetrator and put him in prison. Then, after the investigation made it clear that a named partner was behind the placement of the spy camera, the firm was not even sure whether Mr. Tenney was going to be fired and still work at Merritt & Tenney, LLP, let alone whether or not the firm would prosecute Mr. Tenney's actions. A jury will not be pleased with the notion that finding and prosecuting the perpetrator was important to the firm right up until the moment that a named partner was arrested.

The jury will be presented with facts supporting significant compensatory damages suffered by Elaine, as she is not likely to be comfortable in a work setting again. Given her work history and future earning capacity, her compensatory damages alone would exceed your firm's insurance limits. In addition, Dean's consortium claim alone warrants a significant award. Finally, this case presents facts that would support a headline making punitive damages award, as clearly the actions rise to a level that are not subject to any punitive damages cap.

### DEMAND

My clients are willing to settle all claims against all possible parties – including Mr. Tenney, the firm and all partners - for the policy limits of $1,000,000.00. Given the behavior involved and damages suffered, it is likely that a jury will award a verdict far in excess of this number. Clearly this is a case that is likely to anger a jury.

We recognize that some actions involved in this matter could arguably fall outside of insurance coverage. While we certainly do not agree with this position, this demand is not contingent upon coverage existing. This demand is made pursuant to *Southern General v. Holt*, 200 Ga. App. 757, 409 S.E.2d 759 (1991). If the offer is not accepted by June 11, 2010, the policy limits demand will be off the table and we will proceed to file suit and seek a sum in excess of the firm's policy limits. To that end, please forward this demand on to your carrier so that they are on notice of this attempt to settle within the policy limits.

In addition to this *Holt* demand, I am making an unliquidated demand at this point as well. Under the Unliquidated Damages Interest Act, O.C.G.A. § 51-12-14, if the amount demanded in this letter is not paid within thirty (30) days of the mailing of this notice, then, upon a judgment for this amount or a sum greater than this amount, you will also be liable for statutory interest running from the 30th day following this notice.

If you would like to discuss anything regarding this demand, please feel free to call. I look forward to your response.

Regards,

Allen L. Broughton

IN THE STATE COURT OF COBB COUNTY
STATE OF GEORGIA

ELAINE PELTON and,                    )
DEAN PELTON,                          )
                                      )
            Plaintiffs,               )
                                      )
v.                                    )        Civil Action File No. _10-A-7442-5_
                                      )
MERRITT & TENNEY, LLP,                )
MERRITT WATSON, LLP, and              )
JAMES F. TENNEY,                      )
                                      )
            Defendants.               )
_____ )

## COMPLAINT FOR DAMAGES

COME NOW Plaintiffs Elaine Pelton and Dean Pelton and state the following:

1.

Plaintiffs are married and residents of the State of Georgia.

2.

Defendant Merritt & Tenney, LLP, ("M&T") is a limited liability partnership authorized

to conduct business in Georgia and may be served with process upon any partner or agent

allowed to receive service of process at its principal place of located at 200 Galleria Parkway,

Suite 500, Cobb County, Atlanta, Georgia 30339-3183.  M&T was the legal designation of the

firm on the date of the incident in question.

3.

Defendant Merritt Watson, LLP ("M&W") is a limited liability partnership authorized to

conduct business in Georgia and may be served with process upon any partner or agent allowed

to receive service of process at its principal place of business located at 200 Galleria Parkway,

Suite 500, Cobb County, Atlanta, Georgia 30339-3183.



EXHIBIT
B

4.

Defendant James F. Tenney ("Tenney") is resident and citizen of the State of Georgia and may be served with process at his residence located at 1231 Pebble Creek Road, S.E., Cobb County, Marietta, Georgia 30067-5433.

5.

Venue and jurisdiction in this Court is proper. This Court has subject matter jurisdiction over the matters at issue.

6.

On May 10, 2010, Plaintiff Elaine Pelton reported to her job as legal secretary at Merritt & Tenney, LLP, at approximately 7 AM. Elaine had been working at M&T for 10 years as a legal secretary and had sat in the same desk for her entire career.

7.

Everything was proceeding as a normal Monday morning until Elaine heard an object fall on her Dictaphone foot pad at approximately 10:30 AM.

8.

Elaine looked under her desk and saw a black object, about the size of a disposable cigarette lighter, lying on the floor at her feet. The object was black, seemed electronic in nature and had a strip of velcro tape attached to it. Elaine looked up on the underside of her desk to where she thought the object fell from and found a strip of Velcro attached on the underside of her desk as well. The Velcro tape was located directly in front of her chair.

9.

Elaine picked the object up and saw what seemed to be a lens or viewfinder on one side along with blinking lights and some writing. Elaine emailed and telephoned her husband, Dean,

to see if he knew what the object was as he is an experienced operator of visual technology equipment and computers.  Dean conducted a Google search of the item and discovered that it was a small surveillance spy camera.

10.

When attached to the underside of her desk to the Velcro strip, the hidden spy camera pointed directly at Elaine's chair, legs, and genitalia.

11.

Immediately concerned that it could be a person from outside the office that placed the camera under her desk, Elaine spoke with Pam Elder, another legal assistant with M&T.  Elaine explained to Pam Elder that the object was a spy camera and that she found it attached under her desk pointed at her genital area and told Pam Elder to go check under her desk.  There was not a spy camera under Pam Elder's desk.

12.

Next, Elaine went to the desks of two other legal secretaries, Charna Horwath and Jackie Rios, and told them about the spy camera and its location underneath her desk.

13.

Charna Horwath told Elaine that she should send an email to the firm's partners—Bill Merritt, James Tenney, and Lex Watson—regarding what she had found and where it was hidden and also to inform building security.  Elaine also decided to include all female employees of M&T, both secretaries and female attorneys.

14.

After Elaine sent the email, she immediately packed her things to go home with the camera.  On her way out the door, Elaine ran into Nancy Wiggins-Lester, a female attorney with

M&T. Referencing the email she received, Nancy Wiggins-Lester asked to see the spy camera. Elaine lifted up the spy camera, got into a waiting elevator and later met up with her husband Dean to view the recorded video clip that was stored on the spy camera using Dean's laptop computer.

15.

Once home, Elaine gave the camera to Dean. Dean immediately realized the camera was equipped with its own flash memory drive capable of holding and saving 8 GB worth of video and images. Dean removed the memory card and inserted it into his own computer.

16.

The first video on the memory drive was recorded at approximately 6:30 AM on the morning of May 10, 2010. The recorded video lasts 1:56, but it is the first 11 seconds of the video that are the most shocking and deplorable.

17.

The video begins with a ruffled sound similar to a person running their finger over a microphone. The video begins with what appears to be a person's hand fidgeting with the camera and somehow trying to place the camera underneath the desk. Once the camera is seemingly in optimal genital area viewing, the arm retracts and the person bends down to check on his handiwork.

18.

Six seconds into the video, after the preliminary adjustment and placement of the spy camera underneath Elaine's desk pointed towards her seat and genitalia area, the perpetrator bends down to look underneath the desk to check on his handiwork.

19.

Six seconds into the video, the perpetrator bends down to look at the spy camera, presumably to make sure that the camera is pointed perfectly at Elaine's genitalia area.

20.

Six seconds into the video, the perpetrator's face appears in the upper left corner of Elaine's desk to check on his handiwork.

21.

Six seconds into the video, Defendant James F. Tenney bends down to check on the spy camera he placed underneath the desk directly at the genitalia area of his secretary, Elaine Pelton, who has worked at Merritt & Tenney, LLP, for 10 years and has always sat in the same desk.

22.

Defendant Tenney's face peers underneath Elaine's desk at the spy camera for couple of seconds.  Defendant Tenney stares directly at the spy camera trying to determine whether the placement of the camera is just right.

23.

Presumably, Defendant Tenney is not satisfied with the position of the spy camera or the angle it is pointed towards Elaine's genital area since Defendant Tenney reaches under the desk and makes one more last adjustment to the spy camera.

24.

Defendant Tenney was staring directly at the camera and placing it perfectly the way he wanted it since you see his arm reach under the desk one last time to make the last perfect adjustment right before the viewer sees his feet walk out of the office.

25.

When Elaine and Dean viewed the video for the first time, there was no doubt that they immediately recognized the person that put the camera underneath her desk pointed at her genital area. Elaine did not return to work.

26.

On May 11, 2010, at 8:36 AM, undersigned counsel sent a notice letter to Defendant M&T via the three managing partners—Bill Merritt, James Tenney, and Lex Watson (the "M&T Partners"). The M&T Partners already knew about the device because of the email that Elaine sent on May 10th, but the letter outlined the events of May 10, 2010, and let the M&T Partners know that Elaine felt violated as a result of the discovery. A true and correct copy of the Notice Letter is attached hereto as Exhibit A.

27.

On May 11, 2010, at 3:19 PM, approximately 6 hours and 43 minutes after the M&T Partners received the Notice Letter, M&T partner Lex Watson responded to the letter via email and sent carbon copies to the other M&T partners, Bill Merritt and James Tenney. A true and correct copy of the Response Letter is attached hereto as Exhibit B.

28.

After 6 hours and 43 minutes of investigation, M&T was able to state that "[w]e are certain that no one in our firm would ever engage in such activity, and thus it would appear that someone else with access to the building has engaged in this activity."

29.

Additionally, after 6 hours and 43 minutes of investigation, M&T determined that

"[c]ertainly, none of the partners were aware of any such activities and will not tolerate any such

activities."

30.

Defendant Tenney's actions in this matter were an illegal attempt to commit a physical

injury upon Defendant Elaine Pelton.

31.

Plaintiffs are entitled to recover damages for civil assault.

32.

Defendant Tenney placed the surveillance camera underneath the desk in manner which

was an unlawful touching of Plaintiff Elaine Pelton's person.  The indirect unlawful touching

violated Plaintiff Elaine Pelton's person and right to her own body.

33.

Defendant Tenney's actions constitute an unlawful touching and any unlawful touching is

a physical injury and is actionable.  Plaintiff Elaine Pelton is entitled to recover damages under

Georgia law for Defendants' unlawful touching.

34.

The physical impact on Plaintiff Elaine Pelton caused her physical injury and the physical

injury has caused her mental stress and anguish.

35.

Plaintiff Elaine Pelton is entitled to recover damages for mental pain, suffering, and

anguish.

36.

Defendants' actions and conduct were malicious and wanton and directed toward Plaintiff Elaine Pelton.

37.

Plaintiff Elaine Pelton is entitled to recover damages for mental pain, suffering, and anguish.

38.

Defendants are liable to Plaintiffs directly, as well as under theories of respondeat superior and agency principles.

39.

Defendant M&T, as a business open to the public, is bound under Georgia and common law to exercise the highest degree of care, foresight, prudence and extraordinary diligence to assure that employees are not retained or supervised in a negligent manner.

40.

Plaintiffs' injuries were caused by the negligence, wrongdoing, unlawful acts and omissions, carelessness, recklessness and misconduct of Defendant M&T and its agents and employees in the negligent retention and supervision of Defendant Tenney.

41.

Plaintiffs' injuries were caused by the negligence, wrongdoing, unlawful acts and omissions, carelessness, recklessness and misconduct of Defendant M&T in the supervision, training and standardizing of managers, partners, associates, and other law firm personnel.

42.

Defendant M&T was negligent in exercising its duty to Plaintiff Elaine Pelton, and said negligence was the proximate cause of her injuries.

43.

Plaintiffs are entitled to an award of damages from Defendant M&T as a result of the negligence set out herein.

44.

Defendants' conduct subjected Plaintiffs to severe emotional distress.

45.

The injuries sustained by Plaintiffs were proximately caused and/or substantially contributed to by Defendants' negligence which has caused incredible and continuing emotional distress.

46.

Defendants are liable to Plaintiffs for all damages recoverable under Georgia law, including general, special and compensatory proximately resulting from the intentional and negligent infliction of emotional distress upon Plaintiff brought about by the acts and omissions of Defendants.

47.

Plaintiff Dean Pelton is the husband of Plaintiff Elaine Pelton and was so on the date in question.

48.

As a direct and proximate result of the negligence and other acts of Defendants, Plaintiff Dean Pelton suffered the loss of support, services and companionship of his wife, Plaintiff Elaine

Pelton.   Defendants are therefore liable to Plaintiff Dean Pelton for loss of consortium in an

amount to be proved at trial.

49.

The actions of Defendant M&T's employees in failing to recognize possible unlawful

surveillance and other unlawful explicit acts to continue in the work place represents negligent

hiring, training, supervision and retention of said employees by Defendant M&T.

50.

Because Defendant M&T had knowledge of, or in the exercise of reasonable care should

have had knowledge of, the environment and propensity of Defendant M&T's employees to

conduct unlawful surveillance and other unlawful and explicit acts within the work place,

Defendant M&T is liable for the negligent hiring, training, supervision and retention of its

employees, as well as the negligent entrustment of said duties.   Said negligence was the

proximate cause of damages and injuries to Plaintiffs.

51.

Defendant M&T's negligent hiring, training, supervision and retention of its employees

was the proximate cause of damages and injuries to Plaintiffs.

52.

Defendant M&T is liable to Plaintiffs for all of the damages sustained as a result of its

employees' tortious conduct toward Plaintiffs.   Plaintiffs are entitled to recover all damages,

including general, special and compensatory damages proximately resulting from said tortious

conduct.

53.

Defendant M&T and its agents are liable for Plaintiffs' injuries sustained, pain and suffering, cost of treatment and all other elements of damages allowed under law.

54.

Defendant M&T failed to enact and enforce a system by which members of the public and Defendant M&T's invitees and employees would be offered a safe and congenial work place wherein an employee or an invitee would not be concerned about a possible video surveillance camera being underneath a desk or other position and said failure to enforce policies, procedures and systems was a proximate cause of damages to Plaintiffs.

55.

Defendants' actions constitute negligence per se.

56.

Plaintiffs, through counsel, attempted to obtain the status of Defendant Tenney's employment status with Defendant M&T shortly after the facts of the alleged incident came to light with the managing partners of Defendant M&T, in part to obtain information that could be helpful to determine Plaintiff Elaine Pelton's work status and ability to return to work. Defendant M&T, through its agents, refused to provide the employment status of Defendant Tenney or any information regarding Defendant Tenney's employment status whatsoever.

57.

The foregoing acts of the Defendant M&T evidences a species of bad faith that entitles Plaintiffs to recover her necessary expenses of litigation, including an award of reasonable attorney's fees and expenses required by this action.

58.

The injuries sustained by Plaintiffs were the direct and proximate result of the negligence of the Defendants. But for said negligence, Plaintiffs would not have suffered injuries and damages.

59.

As a proximate and foreseeable result of the negligence of Defendants, Plaintiffs received injuries, endured pain and suffering, mental anguish, loss of the enjoyment of life, loss of consortium, and suffered other damages as will be proven at trial and permitted under Georgia law.

60.

That each of the forgoing acts and omissions constitute an independent act of negligence on the part of Defendants and one or more or all above stated acts were the proximate causes of the injuries to Plaintiffs.

61.

Plaintiffs are entitled to recover for the injuries and pain and suffering sustained, and all other elements of damages allowed under Georgia law, including but not limited to all compensatory, general, special, incidental, consequential, punitive and/or other damages permitted. Plaintiffs states their intention to seek all compensatory, special, economic, consequential, general, punitive, and all other damages permissible under Georgia Law, including, but not limited to:

    a)  Personal injuries;

    b)  Invasion of privacy;

    c)  Past, present and future pain and suffering;

d) Mental anguish;

e) Loss of the capacity for the enjoyment of life;

f) Lost wages;

g) Impaired ability to labor;

h) Incidental expenses;

i) Loss of earning capacity; and

j) Consequential damages to be proven at trial.

62.

The Defendants acted with willful misconduct, malice, fraud, oppression, wantonness and an entire want of care raising the presumption of a conscience indifference to the consequences. Accordingly, Plaintiffs are entitled to recover punitive damages, without limitation or cap, from each of the Defendants, in accordance with the enlightened conscience of an impartial jury.


WHEREFORE, Plaintiffs Elaine Pelton and Dean Pelton demands judgment against Defendants Merritt & Tenney, LLP, Merritt Watson, LLP, and James F. Tenney and requests the following:

(a)     Process issue as provided by law;

(b)     Plaintiffs be awarded actual damages in amounts to be shown at trial from the Defendants;

(c)     Plaintiffs be awarded all damages for the permanent injury to Elaine Pelton and all general, special, compensatory, economic, punitive and other allowable damages in accordance with the enlightened conscience of an impartial jury from the Defendant and as permitted under Georgia law;

(d)     That all costs of this action be cast against Defendants;

(e)     For attorney's fees and costs of litigation in an amount which will be proven

        through the evidence at the time of trial;

(f)     Plaintiffs have a trial by jury; and

(g)     Plaintiff has such other relief as this Court deems just and proper.

This 27th of July, 2010.

                                        ALLEN L. BROUGHTON, P.C.

                                        Allen L. Broughton
                                        Georgia Bar No. 086359
                                        Brian C. McCarthy
                                        Georgia Bar No. 001322
                                        Attorneys for Plaintiff

305 West Wieuca Road, N.E.
Atlanta, Georgia  30342
404-842-7700

# ALLEN L. BROUGHTON, P.C.

**Attorneys at Law**
305 West Wieuca Road
Atlanta, Georgia   30342

---

| | |
|---|---|
| Telephone:   (404) 842-7700 | alb@atlantatriallawyers.com |
| Facsimile:   (404) 842-7717 | www.AtlantaTrialLawyers.com |

Allen L. Broughton, P.C.
Licensed in Georgia & North Carolina

May 10, 2010

*VIA EMAIL ONLY*

William J.W. Merritt, Esq.
Merritt & Tenney, LLP
Suite 500
200 Galleria Parkway
Atlanta, Georgia  30339

*VIA EMAIL ONLY*

James F. Tenney, Esq.
Merritt & Tenney, LLP
Suite 500
200 Galleria Parkway
Atlanta, Georgia  30339

*VIA EMAIL ONLY*

Lex A. Watson, II, Esq.
Merritt & Tenney, LLP
Suite 500
200 Galleria Parkway
Atlanta, Georgia  30339

Dear Messrs. Merritt, Tenney, and Watson:

This law firm represents Dean and Elaine Pelton.

I am writing this letter to inform Merritt & Tenney, LLP, ("M&T") and its partners of a very disturbing event which came to Elaine's attention this morning.

Elaine arrived at work yesterday morning around 7 AM for her usual 7 AM to 4 PM work day as a legal secretary at M&T much the same way she has done for the past 10 years.  Shortly after relieving the receptionist from 10 AM to 11:30 AM, Elaine heard a "clunk" sound of something hitting her Dictaphone pad beneath her desk.

Confused, Elaine bent down to find a small black object, about the size of a cigarette lighter, lying on the floor.  She looked up to where she thought it came from and found a small strip of Velcro tape where the object had been attached to the underside of her desk.

The object had some blinking lights on it and writing on the side and Elaine began to try and find out what it was.  Elaine emailed her husband, who did a quick search on the internet of the writing on the side of the object, and confirmed that it was in fact a wireless flash drive spy camera.

When attached to the underside of her desk to the Velcro strip, the hidden spy camera pointed directly at Elaine's chair, legs, and genitalia.



William J.W. Merritt, Esq.
James F. Tenney, Esq.
Lex A Watson, Esq.
May 10, 2010
Page 2

Immediately concerned that it could be a person from outside the office that placed the camera under her desk, Elaine went to another secretary in your office, Pam Elder, showed her the device, its location, and told her to "go look under your desk." Thankfully, Ms. Elder did not find a device under her desk.

Next, Elaine went to yet another legal secretary, Charna Horwath, and told her about the device and its location. Ms. Horwath advised Elaine to "email the partners" and "inform building security."

Elaine then emailed all M&T partners regarding the device copying all the secretarial staff and the female attorneys in M&T. After the email was sent from Elaine's merritt-tenney.com email address, Nancy Wiggins-Lester ran into Elaine by the office elevators and asked to see the device, presumably so she could go and check her own desk for anything similar.

Elaine feels extremely violated by this event and the discovery of this hidden spy camera, especially given its location and the images and video it was designed to collect under her desk, pointed at her groin area. The discovery of such a device creates a hostile work environment for Elaine and she is concerned as to how long such a device has been there since she has sat in the same desk for her full 10 years of employment.

To the best of my knowledge, M&T does not have a human resources department or a human resources officer. I am writing this letter to M&T and its partners to put M&T on notice of this event and the possible behavior of one of M&T's employees placing the camera underneath Elaine's desk and creating such an environment in the work place.

Thank you for your time. Please feel free to contact my office with any questions.

Regards,

*/s/ Brian C. McCarthy*

Brian C. McCarthy

**Brian McCarthy**

| From: | lwatson@merritt-tenney.com |
|---|---|
| Sent: | Tuesday, May 11, 2010 3:19 PM |
| To: | Brian McCarthy |
| Cc: | jtenney@merritt-tenney.com; wmerritt@merritt-tenney.com |
| Subject: | Elaine Pelton |
| Attachments: | SKMBT_50010051111330.pdf |

Mr. McCarthy:

Please see the attached letter regarding yesterday's incident.

I have not heard back from your office regarding Elaine coming to the office so that she can speak with the police and turn the camera over to them. As I indicated to you and to Mr. Broughton earlier, we cannot and will not tolerate or condone the invasion of our employees' privacy. We are certain that no one in our firm would ever engage in such activity, and thus it would appear that someone else with access to the building has engaged in this activity. Accordingly, it is very important that the matter be properly and expeditiously investigated by the police so that everyone in the building can be protected from another such incident. Please let me know when Elaine will be here.


Lex A. Watson, II
Merritt & Tenney, LLP
200 Galleria Parkway, Suite 500
Atlanta, Georgia 30339
Phone (770) 952-6550
Fax (770) 952-0028

IRS Notice:

Unless expressly stated otherwise above, in the event this communication contains information regarding federal tax issues, U.S. Treasury Department Regulations require us to advise you that nothing contained in this message was intended or written to be used, can be used by any taxpayer, or may be relied on or used by any taxpayer for the purpose of avoiding penalties that may be imposed on the taxpayer under the Internal Revenue Code of 1986, as amended. It may not be shared with any other person without our prior written consent other than as required by law or by ethical rules. This prohibition on sharing this message does not preclude you from sharing with others the federal tax nature of any transaction discussed herein or the fact that you may have consummated such transaction.

Confidentiality Notice:

This message is being sent by or on behalf of an attorney. It is intended exclusively for the individual or entity to which it is addressed. This communication may contain information which is proprietary, privileged or confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately by e-mail and delete all copies of the message. We have taken precautions to minimize the risk of transmitting software viruses, but we advise you to carry out your own virus checks on any attachment to this message. We cannot accept liability for any loss or damage caused by software viruses.

1

EXHIBIT
B

# MERRITT & TENNEY LLP

**ATTORNEYS AT LAW**
SUITE 500
200 GALLERIA PARKWAY, S. E.
**ATLANTA, GEORGIA 30339-3183**

TELEPHONE (770) 952-6550
FACSIMILE (770) 952-0028
WWW.MERRITT-TENNEY.COM

May 11, 2010

Brian C. McCarthy, Esq.
305 West Wieuca Rd.
Atlanta, Georgia 30342

                    In re:   Elaine Pelton

Dear Mr. McCarthy:

        With respect to the discovery that Ms. Pelton made yesterday, we are obviously upset and disturbed that anyone would place any camera in our offices to spy upon or otherwise invade the privacy of our personnel, and that it was apparently placed in a location to obtain illicit images of Ms. Pelton makes the actions of the perpetrator all the more egregious. Certainly, none of the partners were aware of any such activities and will not tolerate any such activities.[1]

        To both get to the bottom of this incident, and to insure that no similar incident ever occurs again, we are undertaking the following steps:

(a)     Building security has been notified of the incident, and they have been requested to warn other tenants in the building to check their spaces for suspicious objects;

(b)     We have requested that each person in our offices periodically check their office for unusual object or materials; and

(c)     We have contacted the Cobb County Police Department and have requested that they investigate the incident and attempt to determine who might have placed the object in that office. In that regard, it is our understanding that Ms. Pelton still has possession of the camera that she found.[2] However, the camera will need to be turned over to the authorities for use in connection with that criminal investigation. Hopefully, they will be able to trace the camera to the party that

---

[1] Notwithstanding the statement in your letter, this incident has not created a hostile work environment. Elaine has been with our firm long enough to know that we would not, and will not, tolerate such activity. What has occurred is the commission of a criminal act by someone, and we intend to press the authorities to find out who did it and to prosecute.

[2] Elaine is not in the office today (understandably).

Mr. McCarthy
May 11, 2010
Page 2

originally purchased the camera,[3] and thereby determine who placed the camera in our offices.  If they do, then we certainly would want the police to pursue criminal charges to the fullest extent permitted under the law – and we believe that you would concur in that desire.

With respect to the preservation of information, we do not intend to alter our normal practice regarding the preservation of information.  Obviously we do not have any documents or data that came from and/or may be related to the camera or its discovery (other than the emails from Elaine Pelton and from you).  Therefore, as of today, there is very little to preserve.  With respect to communications (electronic or otherwise) between personnel within our offices, communications regarding client matters are privileged and not discoverable.

Once again, we want you to know that we are deeply disturbed by this incident and we are determined to find out how it occurred, and to prosecute whoever placed the camera in Elaine's office.

Very truly yours,

Lex A. Watson, II

---

[3]  As you may be aware, most electronics/computer stores scan the serial numbers of such devices at the time they are purchased, and as a result it may be possible for the Cobb County Police to determine who purchased the camera.  The ability to obtain fingerprints from the camera and/or the underside of the desk will depend upon how much the camera has been handled by Ms. Pelton and/or others, and will depend upon how long the camera has been in her office.

The Hartford
One Hartford Plaza
Hartford, CT 06155
T (860) 547 5000



TRUSTED
200
YEARS
**THE HARTFORD**

SENT VIA CERTIFIED MAIL
RETURN RECEIPT REQUESTED

September 13, 2010

Richard L. Robbins
Robbins Law, LLC
999 Peachtree Street, N.E., Suite 1120
Atlanta, Georgia 30309

| | | |
|---|---|---|
| RE: | Lawsuit: | **Elaine Pelton et al v. Merritt & Tenney, LLP, et al** |
| | | **State Court of Cobb County, No. 10-A-7442-S** |
| | Claim No.: | **YVCL55186** |

Dear Mr. Robbins:

Hartford Fire Insurance Company ("Hartford") has received your letter of August 13, 2010 tendering the defense of the referenced lawsuit on behalf of "Merritt Watson LLP (fka Merritt & Tenney, LLP)" ("Law Firm")[1] for whom you filed an answer. After reviewing the allegations of the complaint and the terms of the applicable policy, Hartford has determined that the claims may not be covered. Hartford will agree to defend the Law Firm under a reservation of rights. Hartford also disclaims coverage as set forth in this letter. The purpose of this letter is to identify the key coverage defenses that Hartford perceives at this time.

**I. The Lawsuit**

In their complaint, plaintiffs Elaine Pelton and Dean Pelton allege that Elaine had worked as a legal secretary for the Law Firm seated at the same desk for 10 years. After she reported for work on May 10, 2010, she located a black object that turned out to be a spy camera pointed at her chair, legs and genitalia. After informing the firm's partners and female employees to what she found, Elaine went home and gave the camera to her husband Dean. Plaintiffs contend the footage shows James F. Tenney (a partner of the Law Firm)

---

[1] While the Complaint lists Merritt & Tenney LLP and Merritt Watson LLP as separate entities, you have answered the complaint on behalf of "Merritt Watson LLP f/k/a Merritt & Tenney, LLP." For convenience, Hartford uses the term "Law Firm" in this letter. However, pending clarification and resolution of the actual legal status of the respective partnership entities, Hartford reserves its rights as to Merritt Watson LLP on the additional issue of whether Merritt Watson LLP is an insured for this claim. *See* Section II, *infra.*



EXHIBIT
C1

1

adjusting the camera underneath the desk to be placed directly at Elaine's genitalia. Plaintiffs also contend that Tenney's conduct was "illegal." (¶ 30).

Plaintiffs allege that their counsel informed the Law Firm's managing partners – including Bill Merritt, James Tenney and Lex Watson – outlining the events of the prior day. The Law Firm responded later that none of the partners were aware of the activities and that it appeared to be the actions of someone with access to the building.

Plaintiffs contend that Tenney's placement of the camera was an unlawful touching that has caused her mental stress and anguish. (¶ 34). In addition, plaintiffs assert that defendants' conduct was malicious and wanton and that defendants are liable both "directly, as well as under theories of respondeat superior and agency principles." (¶¶ 36, 38). Separately, plaintiffs seek to recover against the Law Firm for negligently and wrongfully hiring, training, retaining and supervising Tenney and the Law Firm's employees. Further, against M&T, plaintiffs allege a failure to provide "a safe and congenial work place." (¶ 54).

For relief, plaintiffs seek compensatory and punitive damages along with attorney fees against the Law Firm for its "bad faith." Separately Dean Pelton seeks to recover for the "loss of support, services and companionship" of his wife Elaine Pelton.

In its answer, the Law Firm defends that none of the partners other than Tenney were aware of the camera and that plaintiffs have shown no evidence that the Law Firm knew or should have known of the camera. The Law Firm denies liability for the placement of the camera under the theories advanced by plaintiffs.

## II. The Policy

Hartford issued policy number 20 SBA TE1805 for the policy period 7/1/09-7/1/10 (the "Policy") to Merritt & Tenney as the named insured. The Policy contains a 1 million dollar limit for both liability and Personal and Advertising Injury and a 2 million general aggregate limit.

Based on the information received, Merritt Watson, LLP is a successor entity. Under the section "Newly Acquired or Formed Organization," the policy covers certain successor partnerships but not for covered injuries that occurred or "offenses" that were committed before you acquired or formed the organization. Consequently, there would not appear to be coverage for liabilities of Merritt Watson, LLP.

The Policy contains coverage form SS 00 08 04 05 which reads as follows:

### A. COVERAGES

1.   **BUSINESS LIABILITY COVERAGE (BODILY INJURY, PROPERTY DAMAGE, PERSONAL AND ADVERTISING INJURY)**

Insuring Agreement

a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply

\* \* \*

The Policy will only respond to "bodily injury", "property damage" or "personal and advertising injury" occurring during the policy period in the coverage territory. Additionally, the "bodily injury" or "property damage" must be caused by an "occurrence" defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

The terms "bodily injury", "property damage" or "personal and advertising injury", "bodily injury" are defined as:

\* \* \*

5.     "Bodily injury" means physical:

a.  Injury;
b.  Sickness; or
c.  Disease

Sustained by a person and, if arising out of the above, mental anguish or death at any time.

\* \* \*

20.     "Property damage" means:

a.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
b.  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

\* \* \*

3

17. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   a. False arrest, detention or imprisonment;
   b. Malicious prosecution;
   c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that the person occupies, committed by or on behalf of its owner, landlord or lessor;
   d. Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
   e. Oral, written or electronic publication of material that violates a person's right of privacy;
   f. Copying in your "advertisement", a person's or organization's "advertising idea" or style of "advertisement";
   g. Infringement of copyright, slogan, or title of any literary or artistic work, in your "advertisement"; or
   h. Discrimination or humiliation that results in injury to the feelings or reputation of a natural person.

Further, the Policy contains exclusions including the following:

   a. **Expected Or Intended Injury**

(1) "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property; or

(2) "Personal and advertising injury" arising out of an offense committed by, at the direction of or with the consent or acquiescence of the insured with the expectation of inflicting "personal and advertising injury".

\* \* \*

   e. **Employer's Liability**

"Bodily injury" to:

(1) An employee of the insured arising out of and in the course of:

(a) Employment by the insured; or

4

(b) Performing duties related to the conduct of the insured's business.

(2) The spouse, child, parent, brother, or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the Insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share 'damages' with or repay someone else who must pay 'damages' because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract."

\* \* \*

p. **"Personal and advertising injury".**

(3) Arising out of a criminal act committed by or at the direction of the insured;

\* \* \*

(15) Arising out of discrimination or humiliation committed by or at the direction of any "executive officer", director, stockholder, partner or member of the Insured.

\* \* \*

r. **Employment-related Practices Exclusion**

"Bodily injury" or personal and advertising injury" to:

(1) A person arising out of any:

(a)  Refusal to employ that person;

(b)  Termination of that person's employment; or

(c)  Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at the person, or

(2) The spouse, child, parent, brother or sister as a consequence of "bodily injury" or "personal and advertising injury" to the person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

(1)     Whether the insured may be liable as an employer or in any other capacity; and

(2)     To any obligation to share damages with or repay someone else who must pay damages because of the injury.

## III. Analysis

Plaintiffs' claims for emotional distress and loss of consortium may not meet the definition of "bodily injury" in the Policy.  In addition, plaintiffs allege conduct that is intentional which might not meet the definition of an "occurrence."  Even then, coverage for "bodily injury" may be excluded under the provisions cited above or included in the Policy.

There are no allegations of "property damage" to consider.

Lastly, plaintiffs' allegations may not fall within the "offenses" that constitute "Personal or Advertising Injury."  Offense e. covers invasion of privacy but requires "publication" which does not appear to be present as there is no allegation that the images were disclosed to the public.  Offense h. does cover "discrimination or humiliation that results in injury to the feelings or reputation of a natural person."  Even then, coverage may be excluded under the provisions cited above or included in the Policy, since any discrimination or humiliation was apparently committed by a partner or member of the insured (see exclusion p. (15)) and was employment related (see exclusion r.) .

For all of these reasons there does not appear to be any coverage for the claims asserted by plaintiffs.

## IV. Reservation of Rights

Despite the potential for non-coverage, Hartford is prepared to retain Michael H. Schroder of the law firm Swift, Currie, McGhee & Hiers LLP to defend the Law Firm under a reservation of rights that includes the ability to withdraw from the defense at any time or to seek declaratory relief. The terms of the defense include the express understanding that costs incurred by Hartford in defense or settlement will be reimbursed by the Law Firm if coverage is determined not to exist.  No action by Hartford, or any agent, lawyer or representative

thereof while investigating or defending this claim, or in adjusting or compromising the claim, shall be considered an estoppel or waiver of Hartford's right to deny coverage.

Please note that this communication is not intended to be and should not be construed as an exhaustive listing of all policy terms and conditions that may apply to this matter. Hartford hereby reserves all its rights, positions and defenses in the matter. Hartford relies upon all of the terms, conditions, definitions and exclusions in the Policy as well as any provisions of applicable law, whether set forth in this letter or not. Hartford reserves the right to supplement and/or to amend its coverage evaluation.

Because damages may go beyond the terms of coverage and/or beyond the limits of liability, Hartford suggests that you tender the claim to all potential insurers to maximize insurance coverage.

Hartford will reconsider its coverage position if new information warrants additional analysis, or if you believe Hartford has based its present position on inaccurate or incomplete facts. If you believe either to be the case, please advise the undersigned as soon as possible.

Kindly indicate agreement to the terms of the defense offered by Hartford by having this letter signed where indicated below and returning an executed copy to me. Hartford will then assign defense counsel to appear in the case on the Law Firm's behalf.

Should you have any questions regarding the foregoing and/or should you wish to discuss this matter in general, please do not hesitate to contact me.

Very truly yours;

David Majeski
Consultant, Liability Large Loss
The Hartford
One Hartford Plaza, T-8
Hartford, CT 06115
Phone: 860-547-8647
Fax: 860-547-6143
david.majeski@thehartford.com


Agreed to by Merritt Watson, LLP and Merritt & Tenney, LLP:


By: _____
Title:

7

# ROBBINS FREED

ROBBINS FREED & ROSS LLC

RICHARD L. ROBBINS
Direct: 678-701-9320
Email: richard.robbins@robbinsfreed.com

September 16, 2010

**VIA ELECTRONIC MAIL
AND U.S. MAIL**

Mr. David Majeski
Consultant, Liability Large Loss
The Hartford
One Hartford Plaza, T-8
Hartford, CT, 06115
david.majeski@thehartford.com

> Re:   **Policy Number: 20 SBA TE1805
> Named Insured:  Merritt & Tenney, LLP
> Claim:  Elaine and Dean Pelton**

Dear Mr. Majeski:

This is in response in your letter of September 13, 2010.  We appreciate Hartford's willingness to defend the Law Firm albeit under reservation of rights.  We accept the defense offered by Hartford and we acknowledge that this defense is pursuant to a reservation of rights as set forth in your letter.

We do <u>not</u> agree that, as a condition to a defense, the insured must indicate "agreement to the terms of the defense offered by Hartford."  The terms of the defense are established by policy and by law, and it is inappropriate for the insurer to insist that the Law Firm alter those obligations.  The insured will comply with its obligations under the policy, and we expect the insurer to do so as well.  We certainly want to avoid any dispute with The Hartford, as we have a mutual interest in this matter, and we therefore acknowledge that you are proceeding subject to the reservations set forth in your letter.



EXHIBIT
C2

Mr. David Majeski
September 16, 2010
Page 2


      Please have defense counsel contact me immediately regarding the defense.

                       Sincerely yours,

                       Richard L. Robbins

RLR/klm

cc:    Anthony L. Cochran, Esq.
       Nicolette Templer, Esq.
       Kevin Bahr, Esq.
       William J.W. Merritt, Esq.
       Lex A. Watson II, Esq.

September 22, 2010

Kevin J. Bahr, Esq.
Mason Bahr, LLP
Two Ravinia Drive
Atlanta, Georgia  30346



**THE HARTFORD**

RE:    **Elaine Pelton et al v. Merritt & Tenney, LLP, et al**
**State Court of Cobb County, No. 10-A-7442-S**
**Hartford Claim No. YVCL55186**

Dear Mr. Bahr:

Hartford Fire Insurance Company ("Hartford") has received your letter of September 7, 2010 tendering the defense of the referenced lawsuit on behalf of James F. Tenney.  After reviewing the allegations of the complaint and the terms of the applicable policy, Hartford has determined that the claims against Mr. Tenney are not covered by the terms of the policy.  The purpose of this letter is to set forth Hartford's analysis.

**I. The Lawsuit**

In their complaint, plaintiffs Elaine Pelton and Dean Pelton allege that Elaine had worked as a legal secretary for Merritt & Tenney, LLP ("Law Firm") seated at the same desk for 10 years.  After she reported for work on May 10, 2010, she located a black object that turned out to be a spy camera pointed at her chair, legs and genitalia.  After informing the firm's partners and female employees to what she found, Elaine went home and gave the camera to her husband Dean.  Plaintiffs contend the footage shows Mr. Tenney (a partner of the Law Firm) adjusting the camera underneath the desk to be placed directly at Elaine's genitalia.  Plaintiffs also contend that Mr. Tenney's conduct was "illegal." (¶ 30).

Plaintiffs allege that their counsel informed the Law Firm's managing partners – including Bill Merritt, James Tenney and Lex Watson – outlining the events of the prior day.  The Law Firm responded later that none of the partners were aware of the activities and that it appeared to be the actions of someone with access to the building.

Plaintiffs contend that Mr. Tenney's placement of the camera was an unlawful touching that has caused her mental stress and anguish." (¶ 34).  In addition, plaintiffs assert that defendants' conduct was malicious and wanton and that defendants are liable both "directly, as well as under theories of respondeat superior and agency principles." (¶¶ 36, 38).  For relief, plaintiffs seek compensatory and punitive damages against Mr. Tenney.  Separately, Dean Pelton seeks to recover for the "loss of support, services and companionship" of his wife Elaine Pelton.

Claims
Hartford Plaza T-18-2
Hartford, CT 06115
Mailing Address: 690 Asylum Avenue
Hartford, CT 06115
Telephone 860 547 5000
Facsimile 860 547 8782



EXHIBIT
D

In addition to reviewing the allegations of the complaint, Hartford has reviewed the separate answers filed on behalf of the Law Firm and Mr. Tenney. In its answer, the Law Firm defends that none of the partners other than Mr. Tenney were aware of the camera and that plaintiffs have shown no evidence that the Law Firm knew or should have known of the camera. The Law Firm denies liability for the placement of the camera under the theories advanced by plaintiffs. For his part, Mr. Tenney admits he placed the camera under the desk but claims he pointed the camera in the direction of Elaine's chair and not toward her genital area. Further, Hartford has learned that Mr. Tenney has been charged with three criminal counts of unlawful surveillance as a result of his conduct at issue in this case.

## II. The Policy

Hartford issued policy number 20 SBA TE1805 for the policy period 7/1/09-7/1/10 (the "Policy") to Merritt & Tenney as the named insured. The Policy contains a 1 million dollar limit for both liability and Personal and Advertising Injury and a 2 million general aggregate limit. The Policy includes partners of the Law Firm as insureds "but only with respect to the conduct of your business."

The Policy contains coverage form SS 00 08 04 05 which reads as follows:

### A. COVERAGES

1. **BUSINESS LIABILITY COVERAGE (BODILY INJURY, PROPERTY DAMAGE, PERSONAL AND ADVERTISING INJURY)**

   Insuring Agreement

   a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply

* * *

The Policy will only respond to "bodily injury", "property damage" or "personal and advertising injury" occurring during the policy period in the coverage territory. Additionally, the "bodily injury" or "property damage" must be caused by an "occurrence" defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

The terms "bodily injury", "property damage" or "personal and advertising injury" are defined as:

* * *

5.      "Bodily injury" means physical:

   a.   Injury;
   b.   Sickness; or
   c.   Disease

sustained by a person and, if arising out of the above, mental anguish or death at any time.

* * *

20.     "Property damage" means:

   a.   Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   b.   Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

* * *

17. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

   a.   False arrest, detention or imprisonment;
   b.   Malicious prosecution;
   c.   The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that the person occupies, committed by or on behalf of its owner, landlord or lessor;
   d.   Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
   e.   Oral, written or electronic publication of material that violates a person's right of privacy;
   f.   Copying in your "advertisement", a person's or organization's "advertising idea" or style of "advertisement";
   g.   Infringement of copyright, slogan, or title of any literary or artistic work, in your "advertisement"; or
   h.   Discrimination or humiliation that results in injury to the feelings or reputation of a natural person.

      Further, the Policy contains exclusions providing that the insurance does not apply to the following types of claims:

   a.   **Expected Or Intended Injury**

(1) "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property; or

(2) "Personal and advertising injury" arising out of an offense committed by, at the direction of or with the consent or acquiescence of the insured with the expectation of inflicting "personal and advertising injury".

\* \* \*

e.  **Employer's Liability**

"Bodily injury" to:

(1) An employee of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business.

(2) The spouse, child, parent, brother, or sister of that "employee" as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the Insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share 'damages' with or repay someone else who must pay 'damages' because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract."

\* \* \*

p. **"Personal and advertising injury".**

(3) Arising out of a criminal act committed by or at the direction of the insured;

\* \* \*

(15) Arising out of discrimination or humiliation committed by or at the direction of any "executive officer", director, stockholder, partner or member of the Insured.

\* \* \*

**r. Employment-related Practices Exclusion**

"Bodily injury" or personal and advertising injury" to:

(1) A person arising out of any:

(a)   Refusal to employ that person;
(b)   Termination of that person's employment; or
(c)   Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at the person, or

(2) The spouse, child, parent, brother or sister as a consequence of "bodily injury" or "personal and advertising injury" to the person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

(1)   Whether the insured may be liable as an employer or in any other capacity; and

(2)   To any obligation to share damages with or repay someone else who must pay damages because of the injury.

## III. The Analysis

As a partner of the Law Firm, Mr. Tenney would be an insured for conduct related to the firm's business only. The allegations, however, are for personal pursuits that are not related to the operation of the Law Firm. On that basis alone, coverage is absent. In addition, any coverage for "bodily injury" would need to arise from an occurrence. In contrast, plaintiffs allege and Mr. Tenney admits that he intentionally placed the camera under Elaine's desk; accordingly, there is no "occurrence" and these allegations do not fall within the insuring agreement. Separately, even disregarding the allegation (and Mr. Tenney's admission) that the placement of the camera was not an "occurrence" within the meaning of the policy, the claims for emotional distress and loss of consortium are not bodily injuries as defined under the policy. *See* Section [G.(5)] (defining "bodily injury").

In addition to these coverage infirmities, even assuming the insuring agreement somehow was triggered, coverage would be precluded by one or more applicable exclusions. For instance, plaintiffs allege injuries that were intended and expected by Mr. Tenney, which falls squarely within exclusion (a). Moreover, to the extent Elaine was injured in her capacity as an employee of the Law Firm, the policy excludes coverage for bodily injuries to employees under exclusions (e) and (r). Consequently, the bodily injury provisions do not trigger a defense duty for Mr. Tenney.

There are no allegations of "property damage" to consider.

Lastly, no duty to defend exists for "Personal or Advertising Injury." Offense **e.** covers invasion of privacy but requires "publication" which is not alleged. Although offense **h.** does cover "humiliation that results in injury to the feelings or reputation of a natural person," coverage is excluded for injury arising out of a criminal act as well as for "humiliation committed by or at the direction of any … partner." And, to the extent that Elaine was injured in her capacity as an employee of the Law Firm, coverage is excluded under exclusion **(r)**.

## IV. Conclusion

For the various reasons discussed in this letter, and any other policy provisions that may apply, Hartford does not cover the claims asserted against Mr. Tenney. Hartford will reconsider its coverage position if new information warrants additional analysis, or if you believe Hartford has based its present position on inaccurate or incomplete facts. If you believe either to be the case, please advise the undersigned as soon as possible.

Should you have any questions regarding the foregoing and/or should you wish to discuss this matter in general, please do not hesitate to contact me.

Very truly yours,

David Majeski
Consultant, Liability Large Loss
The Hartford
One Hartford Plaza, T-8
Hartford, CT 06115
Phone: 860-547-8647
Fax: 860-547-6143
david.majeski@thehartford.com