IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
Atlanta Division

| | | |
|---|---|---|
| Hartford Fire Insurance Company, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action |
| v. | ) ) | File No. 1:10-CV-3063-RLV |
| Merritt & Tenney LLP, Merritt Watson LLP, James F. Tenney, Elaine Pelton and Dean Pelton, | ) ) ) ) | |
| Defendants. | ) | |

DEFENDANT JAMES F. TENNEY'S BRIEF
IN SUPPORT OF MOTION FOR PARTIAL SUMMARY
JUDGMENT AGAINST PLAINTIFF
AS TO COUNTS I, II, AND III OF TENNEY'S COUNTERCLAIM

COMES NOW Defendant James F. Tenney ("Tenney"), and respectfully submits this Brief in Support of his Motion for Partial Summary Judgment against Plaintiff Hartford Fire Insurance Company ("Hartford") as to Counts I, II, and III of his Counterclaim, showing the Court as follows.

## I.  FACTS

**A.  Introduction.**

Mr. Tenney is a lawyer.  He has practiced as a partner in the law firm known as Merritt & Tenney for more than twenty years ("Tenney's Law Firm" or "M&T").  M&T's partnership was memorialized by a written

partnership agreement. (Tenney Affidavit, ¶ 3). M&T's partners made election to be governed by the Georgia Uniform Partnership Act (the "Act") in 1996, upon the advent of the Georgia General Assembly's amendment of the Act to permit the formation of limited liability partnerships as a type of general partnership. (Tenney Affidavit, ¶ 4). When M&T elected to become a Georgia limited liability partnership under the Act, it did not amend its written partnership agreement. (Tenney Affidavit, ¶ 5).

Elaine Pelton ("Pelton") was employed by Tenney's Law Firm as a legal secretary. In July of 2010, Pelton sued Tenney and Tenney's Law Firm in the State Court of Cobb County, in the matter of *Pelton v. Tenney, et al.,* civil action no. 10-A-7442-5 (hereinafter referred to as the "Underlying Action"). (Pelton Complaint, Exhibit B to Hartford Complaint, Docket No. 1-1, p. 3; Tenney Affidavit, ¶ 7).

**B.    Pelton's lawsuit.**

In her Complaint in the Underlying Action, Pelton alleges that a video camera was placed under her work desk at M&T without her knowledge or consent. (*See*, Pelton Complaint, ¶¶ 8, 9, *et alia*; Docket No. 1-1, pp. 4-5). Pelton alleges that Tenney was the person who placed the camera under her desk. (*See*, Pelton Complaint, ¶¶ 21, 22, *et alia*; Docket No. 1-1, p. 7). Pelton claims that Tenney's placement of the camera has caused her harm and

damage.  Pelton asserts that her damages and injuries include, but are not limited to:

> (a) Personal injuries;
> (b) Invasion of privacy;
> (c) Past, present and future pain and suffering;
> (d) Mental anguish;
> (e) Loss of the capacity for the enjoyment of life;
> (f) Lost wages;
> (g) Impaired ability to labor;
> (h) Incidental expenses;
> (i) Loss of earning capacity; and
> (j) Consequential damages to be proven at trial.

(Pelton Complaint, ¶ 61; Docket No. 1-1, pp. 14-15).  In addition, Pelton's husband, Dean Pelton, asserts a claim for loss of consortium. (Complaint, Underlying Action, ¶ 48; Docket No. 1-1, pp. 11-12).

Tenney admits that he placed the camera under Pelton's desk, admits that it was an ill-considered decision, states on the record that he sincerely regrets this decision, and declares that he will never do such a thing ever again.  (*See, e.g.*, Tenney Answer (Underlying Action), ¶¶ 17, 30-37, 40-46, 48-55, 61). Tenney submits that he intended for the electronic camera device to monitor the conversations and activity of Ms. Pelton for purposes of determining her time spent performing work at her desk.  (Tenney Affidavit, ¶ 8).

After the foregoing events transpired, Tenney's law partners took the

position that Tenney was no longer a partner in the firm (a position that Tenney denies), and they summarily forced him to vacate his office and relocate his practice. (Tenney Affidavit, ¶ 9). M&T changed its name to Merritt Watson LLP, but M&T admits that this new iteration is the same limited liability partnership as M&T, but with an amended name. (Answer of Merritt Watson LLP, ¶ 2; Docket No. 8, p. 2).

After being served with the Pelton Complaint, the claim was tendered to Hartford for a defense under the business liability insurance policy ("Policy") that Hartford sold to M&T. (Tenney Affidavit, ¶ 10). In addition, Tenney made demand upon M&T that it defend and indemnify him against the Pelton claims, pursuant to the indemnity provisions of the Georgia Uniform Partnership Act, O.C.G.A. §14-8-1, et seq., and the M&T partnership agreement (Tenney Affidavit, ¶ 11).

M&T forwarded Tenney's demand to Hartford, making request that Hartford defend Tenney pursuant to Tenney's tender to M&T. (Tenney Affidavit, ¶ 12). Hartford agreed to defend M&T in the Underlying Action, subject to a reservation of rights. (Hartford Complaint, ¶ 14; Docket No. 1, p. 4). Hartford denied coverage to Tenney, and denied any obligations flowing to Tenney relating to his tender to M&T. (Hartford Complaint, ¶ 15; Docket No. 1, p. 5; Tenney Affidavit, ¶ 13).

**C.      Hartford's insurance policy.**

Hartford delivered its Policy to M&T in Georgia.   (Hartford Policy, Docket No. 1-2, p. 3; Tenney Affidavit, ¶ 14).   The Policy that Hartford issued to M&T was in force and effect at all times relevant hereto.   (Docket No. 1-2, p. 3; Tenney Affidavit, ¶ 15).   The Policy provided various coverages to M&T and its partners, to include Tenney.   The pertinent policy provisions of the Policy provide the following.

**1.  Tenney is an insured.**

The Policy was issued to "Merritt & Tenney" as the named insured, and Merritt & Tenney is denoted in the Policy's Declarations as a "partnership." (Docket No. 1-3, p. 2).   Coverage is extended to the partners of Merritt & Tenney, as follows:

> **C. WHO IS AN INSURED**
>
> > 1. If you are designated in the Declarations as:
> >
> > > b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

(Docket No. 1-3, p. 12).   Tenney is a member of the partnership of Merritt & Tenney, and is therefore deemed an insured under the Policy with respect to the conduct of the firm's business.   Each insured is treated separately for

purposes of coverage by Hartford, by way of its "separation of insureds"

provision:

### 5. Separation Of Insureds

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this policy to the first Named Insured, this insurance applies:

(b) Separately to each insured against whom a claim is made or "suit" is brought.

(Docket No. 1-3, p. 18).

## 2.  Hartford has a duty to defend Tenney for covered claims.

The Policy provides broad coverage to Tenney – to include affording

Tenney a defense against Pelton's claims of bodily injury and personal injury:

### A.  COVERAGES

### 1.    BUSINESS LIABILITY COVERAGE (BODILY INJURY, PROPERTY DAMAGE, PERSONAL AND ADVERTISING INJURY)

#### Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply...

b. This insurance applies:

(1) To "bodily injury" and "property damage" only if:

(a) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

6

(b) The "bodily injury" or "property damage" occurs during the policy period;...

(2) To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

(Docket No. 1-3, p. 3).  "Bodily injury" and "personal injury" are defined by

Hartford to mean as follows:

**5.** "Bodily injury" means physical:

a. Injury;
b. Sickness; or
c. Disease

sustained by a person and, if arising out of the above, mental anguish or death at any time.

(Docket No. 1-3, p. 22).

**17.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

**a.** False arrest, detention or imprisonment;
**b.** Malicious prosecution;
**c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that the person occupies, committed by or on behalf of its owner, landlord or lessor;
**d.** Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
**e.** Oral, written or electronic publication of material that violates a person's right of privacy;
**f.** Copying, in your "advertisement", a person's or organization's "advertising idea" or style of "advertisement";
**g.** Infringement of copyright, slogan, or title of any literary or artistic work, in your "advertisement"; or
**h.** Discrimination or humiliation that results in injury to the feelings or reputation of a natural person.

(Docket No. 1-3, p. 24-25).  It is undisputed that the claims asserted by Pelton

allege acts committed by Tenney in the Policy's coverage territory and during the policy period. (Hartford Policy, Docket No. 1-2, p.3). The claims asserted against Tenney by Pelton for personal injury, invasion of privacy, and the consequential damages that allegedly flow therefrom, are all covered by the Policy. (Hartford Policy, Docket No. 1-3, generally).

In addition, the Policy provides coverage to M&T for liability it assumes via an "insured contract." This coverage is promulgated by way of the Policy's "exclusions" section:

**B. EXCLUSIONS**

**1.  Applicable To Business Liability Coverage**

This insurance does not apply to:

**... b. Contractual Liability**

(1) "Bodily injury" or "property damage"; or

(2) "Personal and advertising injury"

for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

This exclusion does not apply to liability for damages because of:

(a) "Bodily injury", "property damage" or "personal and advertising injury" that the insured would have in the absence of the contract or agreement; or

(b) "Bodily injury" or "property damage" assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purpose of liability assumed in an "insured

contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage" provided:

(i) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract", and

(ii) Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

(Docket No. 1-3, p. 5-6).  ⬜Insured contract⬜is defined to include the following:

f. That part of any other contract or agreement pertaining to your business...under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

(Docket No. 1-3, p. 23).

## 3. The Policy provides coverage for Tenney as an indemnitee of Merritt & Tenney.

The Policy provides an extension to coverage, separate and apart from the coverages provided directly to Tenney, by way of the following coverage extension.  This coverage extension is triggered once a defense is afforded to any other insured:

### 3. COVERAGE EXTENSION -SUPPLEMENTARY PAYMENTS

b. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

(1) The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

(2) This insurance applies to such liability assumed by the insured;

(3) The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

(4) The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interest of the indemnitee;

(5) The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee;...

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments...

(Docket No. 1-3, p. 5).

## 4.   The exclusions to coverage relied upon by Hartford do not preempt Hartford□s duty to defend Tenney.

Hartford□s Complaint delineates the exclusions upon which it relies in seeking to deny coverage to its insureds.  Hartford asserts that coverage does not exist for claims of:

i.      □□Bodily injury□.expected from the standpoint of the insured□;

ii.     □Personal injury□.arising out of an offense committed by...the insured with the expectation of inflicting □personal...injury□;

iii.    □Bodily injury□to...an employee of the insured arising out of and in the course of (a) employment by the insured; or (b) performing duties related to the conduct of the insured□s business. □

iv.  □Personal...injury□.(3) arising out of a criminal act committed by or at the direction of the insured;...(15) arising out of discrimination or humiliation committed by or at the direction of any...partner or member of the Insured.□

v.  □Bodily injury□or □personal...injury□to a person arising out of any...employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at the person...□

(Hartford Complaint, ¶ 22, *excerpted for brevity*; Docket No. 1, pp. 8-10). Hartford relies upon these same provisions in its letter denying coverage to Tenney. (Hartford Complaint, Exhibit D; Docket No. 1-3, p. 31).

While the Peltons allege intentional conduct by the Defendants, there are also claims for negligence against Tenney and M&T.  (*See*, Complaint, Underlying Action, ¶¶ 45, 46, 55, 58, 59, 60, *et alia*; Docket No. 1-1, pp. 11-14.  These claims and allegations of negligence causing bodily injury and personal injury are not subject to the exclusions relied upon by Hartford. (Hartford Policy, Docket No. 1-3, pp. 5-12).

**D.     The Matters Before This Court.**

After denying coverage to Tenney, Hartford filed this Complaint for Declaratory Judgment.  Tenney answered Hartford's Complaint and asserted his Counterclaim against Hartford, wherein Tenney seeks an adjudication as to coverage, and seeks statutory and other damages against Hartford.

## II.  ARGUMENT AND CITATION OF AUTHORITY

**A.     The summary judgment standard.**

The Court should grant summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.  Fed.R.Civ.P. 56(c).  The applicable substantive law identifies which facts are material in the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248; 106 S.Ct. 2505, 2510 (1986).  "The moving party bears the initial burden to show, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark*, 929 F.2d at 608.  In this case, Hartford's burden is to present competent evidence designating "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*,

477 U.S. 317, 324; 106 S.Ct. 2548, 2553 (1986).  In insurance coverage cases,

⬜[t]he burden is on the insurer to show that a loss or claim comes within an

exception to coverage.⬜  *Loftin v. United States Fire Ins. Co.*, 106 Ga. App.

287, 294; 127 S.E.2d 53 (1962).

## B.    Choice of law.

The Eleventh Circuit summarized the choice of law rules applicable to

this matter in the case of *American Family Life Assurance Co. v. U.S. Fire*

*Co.*, 885 F.2d 826 (11th Cir. 1989):

> In diversity cases, the choice-of-law rules of the forum state determine
> which state's substantive law applies. *Klaxon Co. v. Stentor Electric*
> *Manufacturing Co.,* 313 U.S. 487, 61 S.Ct. 1020 (1941). Federal
> jurisdiction in this case is based on diversity, and Georgia [is] the
> forum state. Under Georgia choice-of-law rules, interpretation of
> insurance contracts is governed by the law of the place of making.
> *Avemco Insurance Co. v. Rollins,* 380 F.Supp. 869, 872 (N.D.Ga. 1974),
> *aff'd without opinion,* 500 F.2d 1182 (5th Cir. 1974). Insurance
> contracts are considered made at the place where the contract is
> delivered.

*American Family,* 885 F.2d at 830.  *See also, Shorewood Packaging Corp. v.*

*Commercial Union Ins. Co.*, 865 F. Supp. 1577 (N.D. Ga. 1994).

The Policy was delivered and accepted by M&T in Georgia.  Georgia

law governs the contract analysis in this matter.

## C.     Rules of contract construction.

Insurance in Georgia is a matter of contract, and we have long held that contract disputes are well suited for adjudication by summary judgment because construction of contracts is ordinarily a matter of law for the court. *Nationwide Mutual Fire Insurance Co. v. Somers*, 264 Ga.App. 421, 424; 591 S.E.2d 430 (2003).   Construction of an insurance policy is governed by the ordinary rules of contract construction, and when the terms of a written contract are clear and unambiguous, the court is to look to the contract alone to find the parties' intent. *Id.,* citing *Park 'N Go of Georgia, Inc. v. U.S. Fidelity & Guaranty Co.,* 266 Ga. 787, 791; 471 S.E.2d 500 (1996).

Although the cardinal rule of construction is to ascertain the intention of the parties, if the language is susceptible to two different constructions the one most favorable to the insured will be adopted.   *Cincinnati Ins. Co. v. Page*, 188 Ga. App. 876, 878; 374 S.E.2d 768 (1988) *(cert. denied)*.  "Where a term of a policy of insurance susceptible to two or more constructions, even when such multiple constructions are all logical and reasonable, such term is ambiguous and will be strictly construed against the insurer as the drafter and in favor of the insured." *Georgia Farm Bureau Mut. Ins. Co. v. Meyers,* 249 Ga. App. 322, 324; 548 S.E.2d 67 (2001) *(cert. denied)*.

Exceptions, limitations and exclusions to insuring agreements require

a narrow construction on the theory that the insurer, having affirmatively expressed coverage through broad promises, assumes a duty to define any limitations on that coverage in clear and explicit terms. *Cincinnati Ins.,* 188 Ga. App. at 877-878. An insurance policy is a 'contract of adhesion,' prepared by legal draftsmen to be accepted by laymen. Such a contract should be construed as reasonably understood by the insured. *Loftin,* 106 Ga. App. at 294. Insurance policies are construed so as to avoid forfeitures, and to provide coverage. *James v. Pennsylvania General Ins. Co.,* 167 Ga. App. 427, 430; 306 S.E.2d 422 (1983).

**D.   Hartfords policy provides coverage to Tenney, and Hartford breached its contract by denying same.**

Georgia law is clear that by refusing to defend its insured in litigation, an insurer loses all opportunity to contest the negligence of the insured or the injured person's right to recover, and exposes itself to a charge of and penalty for breach of contract. *McGregor v. Columbia National Ins. Co.*, 298 Ga.App. 491, 494; 680 S.E.2d 559 (2009) (*cert. denied*). An insurer who fails to investigate its insured's contentions and refuses a defense will be liable for a breach of the duty to defend if a reasonable investigation at the time would have established the potential for coverage. *Colonial Oil Indus. v. Underwriters,* 268 Ga. 561, 562; 491 S.E.2d 337 (1997). See also *North Metro*

*Directories Publishing v. Cotton States Mut. Ins. Co.,* 279 Ga.App. 492, 494, 631 S.E.2d 726 (2006) (The issue is not whether the insured is *actually liable* to the plaintiffs; the issue is whether a claim has been asserted which falls within the policy coverage and which the insurer has a duty to defend.) (punctuation omitted; emphasis in original).

**1. Georgia law regarding an insurers duty to defend.**

Under Georgia law, an insurance company has a duty to use ordinary care and good faith in the handling of a claim against its insured...*ACCC Ins. Co. v. Carter*, 621 F.Supp.2d 1279, 1283-1284 (N.D. Ga. 2009), citing *Metropolitan Prop. & Cas. Ins. Co. v. Crump,* 237 Ga.App. 96, 97; 513 S.E.2d 33 (1999). This obligation of ordinary care and good faith arises out of the relationship between the insurer and the insured created by the contract or policy of insurance....*Id.*

The contractual relationship between an insurer and its insured creates two independent duties of the insurer -- a duty to indemnify and a duty to defend. *Id.,* citing *Yeomans & Assocs. Agency, Inc. v. Bowen Tree Surgeons, Inc.,* 274 Ga.App. 738, 742; 618 S.E.2d 673 (2005) (*cert. denied*). An insurer's duty to defend and its duty to indemnify are separate and independent obligations.*Nationwide v. Somers*, 264 Ga.App. at 424; citing *City of Atlanta v. St. Paul Fire Ins. Co.,* 231 Ga.App. 206, 208; 498 S.E.2d 782

(1998).  Paramount to the Court's analysis is this maxim:  An insurer's duty to defend is broader than its duty to indemnify.  *Shafe v. American States Ins. Co.*, 288 Ga.App. 315, 317; 653 S.E.2d 870 (2007).

The consideration is not whether Tenney is liable to Pelton, but whether Pelton's claims fall within the Policy's coverage and that Hartford has a duty to defend. *Nationwide v. Somers*, 264 Ga.App. at 424.   "An insurer's duty to defend turns on the language of the insurance contract and the allegations of the complaint asserted against the insured. We look to the allegations of the complaint to determine whether a claim covered by the policy is asserted. If the facts as alleged in the complaint even arguably bring the occurrence within the policy's coverage, the insurer has a duty to defend the action." *Id.*

When the insured bring <u>additional facts</u> to light that may alter the insurer's coverage obligations, the insurer <u>must</u> take those facts into account. As summarized by Georgia's Supreme Court:

> The insurer is under no obligation to independently investigate the claims against its insured. This rule is sound policy because the insured is in the best position to investigate and develop facts that will bear on the coverage issue... **A different rule, however, applies when the complaint on its face shows no coverage, but the insured notifies the insurer of factual contentions that would place the claim within the policy coverage.** The Georgia Court of Appeals held in *Loftin v. U.S. Fire Ins. Co.,* that in this situation the insurer has an obligation to give due consideration to its insured's factual

contentions and to base its decision on ⬚true facts.⬚ The requirement
that an insurer base its decision on true facts will necessitate that the
insurer conduct a reasonable investigation into its insured's
contentions. To relieve an insurer of any duty to investigate its
insured's contentions would allow the allegations of a third-party to
determine the insured's rights under its contract. Placing a duty of
investigation on insurers in these limited circumstances is not an
unreasonable burden, especially in light of the availability of the
⬚procedurally safe course⬚of providing a defense under a reservation of
rights and filing a declaratory judgment action to determine its
obligations. An insurer who fails to investigate its insured's contentions
and refuses a defense will be liable for a breach of the duty to defend if
a reasonable investigation at the time would have established the
potential for coverage.

*Colonial Oil Indus. v. Underwriters Subscribing etc.,* 268 Ga. 561, 562; 491
S.E.2d 337 (1997) (emphasis added). As more fully discussed hereinafter,
Pelton⬚s claims *do* fall within the Policy⬚s coverage, and Hartford breached its
duty to defend Tenney.

## 2. The Policy provides coverage for claims of invasion of privacy.

Pelton⬚s allegations include an assertion that the actions of Tenney
constituted an invasion of her privacy. (Complaint, Underlying Action, ¶ 61;
Docket No. 1-1, pp. 14-15). The Policy provides coverage for this type of
claim. Hartford⬚s personal injury coverage is defined to include personal
injury arising out of:

> 17.c. The wrongful eviction from, wrongful entry into, or invasion of the
> right of private occupancy of a room, dwelling or premises that the
> person occupies, committed by or on behalf of its owner, landlord or
> lessor...

18

(Docket No. 1-3, p. 24-25).

In Georgia, claims of invasion of privacy under this exact policy language have been broadly construed.  In the matter of *Nationwide v. Somers*, Somers was the plaintiff in an action filed against Sunrise relating to Sunrise's alleged breach of a perpetual care contract relating to her son's burial at Sunrise's cemetery.  *Nationwide Mutual Fire Insurance Co. v. Somers*, 264 Ga.App. 421, 591 S.E.2d 430 (2003). In her lawsuit Somers alleged that Sunrise breached the perpetual care contract by failing to maintain her son's gravesite and allowing it to be desecrated. Sunrise demanded that its insurer, Nationwide, provide it with a defense and coverage under a policy of insurance issued by Nationwide to Sunrise. Nationwide reserved rights but agreed to defend Sunrise.  Nationwide then brought an action for declaratory relief against Sunrise and Somers relating to its coverage obligations to Sunrise for the Somers lawsuit.

Nationwide moved for summary judgment regarding its coverage obligations.  At issue were two counts in Somers' complaint: a count alleging that Sunrise desecrated her son's grave with cigarette butts and animal feces, and a count that alleged that Sunrise breached the perpetual care contract by permitting the grave to be littered with trash.  Nationwide asserted that the

damages sought in the complaint were not the type covered by its policy, contending that none of Somers' injuries fall within the policy's definitions.

The trial court denied Nationwide's motion, holding, "under the type of notice pleading in this and the underlying case insurance coverage may be warranted, there are numerous factual issues to be parsed-out in this case," and, "that summary judgment is not an appropriate tool at this juncture in the case." *Nationwide v. Somers,* 264 Ga.App. at 432-433. Thereafter Somers moved for an order granting summary judgment in her favor regarding coverage, which prompted the trial court to amend its order by resolving the coverage issue "in favor of Sunrise and against Nationwide." Nationwide appealed to Georgia's Court of Appeals.

The Court of Appeals affirmed the trial court on the invasion of privacy claim, specifically finding that Nationwide had both a duty to defend Sunrise, and also a duty to indemnify Sunrise if damages were awarded to Somers for claims of emotional distress caused by invasion of privacy. *Nationwide v. Somers,* 264 Ga.App. at 434, 435. Specifically, the Court of Appeals held that the allegations regarding gravesite desecration were covered by the insurance policy's personal injury coverage, particularly the coverage afforded for claims of invasion of privacy:

Coverage B of the policy provides coverage for "personal injury" caused

by an offense arising out of your business... As defined by the policy, [p]ersonal injury means injury, other than bodily injury, arising out of one or more of the following offenses: ... c. **The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies by or on behalf of its owner, landlord, or lessor....** As Somers's complaint alleges that Sunrise caused the grave site to be desecrated, this allegation implies a wrongful entry into or an invasion of the right of private occupancy of the grave site, which would be included within Coverage B. Accordingly, Sunrise would be entitled to be indemnified by Nationwide if damages are awarded on Somers's claims for emotional distress.

*Nationwide v. Somers,* 264 Ga.App. at 435 (emphasis added).

In the matter before this Court, Pelton alleges that Tenney s placement of the camera under her desk constituted an invasion of her privacy, and that she suffered damages, including mental anguish, as a result. (*See* Complaint, Underlying Action, ¶ 61; Docket No. 1-1, pp. 14-15).  In accordance with the *Somers* decision, Hartford is obligated to provide Tenney with a defense to the Pelton claims.  Hartford is in breach of the Policy by its refusal.

### 3.   The Policy provides coverage for Tenney s claim for indemnity from Merritt & Tenney.

Under the Georgia Uniform Partnership Act, a partnership must indemnify every partner against liability incurred by the partner in the course of the partnership s business.   O.C.G.A. §14-8-18(2). The M&T partnership agreement, which came into effect before the Act, is silent on this issue. (Tenney Affidavit, Exhibit A).   Georgia common law at the time of

the inception of the partnership agreement provided that partners of a partnership are jointly and severally liable for the acts of their partners. *Boykin v. Bohler*, 163 Ga. 807; 137 S.E. 45 (1927).  When M&T elected to be governed by the Act, it did not amend the partnership agreement.  (Tenney Affidavit, ¶ 5).  As a result, M&T and its partners are bound by both the Act and by common law partnership law.

Tenney submits that he intended for the electronic camera device to monitor the conversations and activity of Ms. Pelton for purposes of determining her time spent performing work at her desk. (Tenney Affidavit, ¶ 8).  After being sued by Pelton, Tenney made demand upon M&T that it defend and indemnify him against the Pelton claims, pursuant to the Act and the M&T partnership agreement (Tenney Affidavit, ¶ 11).   M&T duly forwarded Tenney's demand to Hartford, making request that Hartford defend Tenney pursuant to Tenney's tender to M&T, which request Hartford has denied.  (Tenney Affidavit, ¶ 12, 13; Hartford Complaint, ¶ 15, Docket No. 1, p. 5).

The Policy provides a "coverage extension" that specifically applies under this circumstance:  "If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met..." (Docket

No. 1-3, p. 5).  Those conditions have been met by Tenney and M&T by virtue of Tenney□s demand to M&T for defense and indemnification, and M&T□s tender of that demand to Hartford.

In addition to the □coverage extension□ above, the Policy affords coverage to Tenney for liabilities assumed by M&T through an □insured contract.□  □Insured contract□ is defined to include the following:

> f. That part of any other contract or agreement pertaining to your business...under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

(Docket No. 1-3, p. 23). The □agreement□ under which M&T assumes the liability of Tenney is promulgated by Georgia common law, and by the Act. Under the Act and common law, the partnership of M&T must defend and indemnify Tenney for the Pelton claims, thus triggering Hartford□s □insured contract□ coverage.  Hartford owes Tenney a defense under the □insured contract□ provisions of the Policy.

### III.  CONCLUSION

Hartford□s Policy provides coverage for the claims asserted against Tenney in the Underlying Action.  Hartford breached its contract by denying coverage to Tenney and by refusing to defend him in the Underlying Action.

Tenney respectfully requests that this Court grant his Motion for Partial Summary Judgment and provide the following relief:

1. As to Count I of Tenney's Counterclaim for Declaratory Relief, a Declaration that the Hartford Policy provides coverage to Tenney, to include the specific duty to defend Tenney against the claims asserted against Tenney in the Underlying Action;

2. As to Count II of Tenney's Counterclaim for Specific Performance, that Hartford has a specific duty to perform its contractual obligations pursuant to the Policy, to include the specific duty to defend Tenney against the claims asserted against Tenney in the Underlying Action;

3. As to Count III of Tenney's Counterclaim for Breach of Contract, that Hartford is in breach of contract by its wrongful denial of coverage to Tenney for the claims asserted against Tenney in the Underlying Action, and that as a result of Hartford's breach it is liable to Tenney for his damages flowing directly and consequentially therefrom, to include:

    (a) the cost and expense of defending the Underlying Action, and;

(b) the cost and expense in pursuing these claims against Hartford so as to cause Hartford to perform per the terms of the Policy.

Respectfully submitted, this 19th day of November, 2010.

MASON BAHR LLP

/s/ Kevin J. Bahr
Kevin J. Bahr, Esq.
Georgia Bar No. 031555
Two Ravinia Drive, Suite 610
Atlanta, GA  30346
Telephone: (770) 399-6450
kjbahr@masonlawfirm.net

Anthony L. Cochran, Esq.
CHILIVIS COCHRAN LARKINS & BEVER, LLP
3127 Maple Drive, N.E.
Atlanta, GA 30305
Telephone:  (404) 233-4171
alc@cclblaw.com

*COUNSEL FOR JAMES F. TENNEY*

**Local Rule 7.1D Font Certification**

I certify that this Brief has been prepared using Century Schoolbook font, type size 13 point, in accordance with LR 5.1C.  Citations to portions of the Hartford insurance policy at issue have been rendered in Arial 12 point font for ease of reference.

MASON BAHR LLP

/s/ Kevin J. Bahr
Kevin J. Bahr, Esq.
Georgia Bar No. 031555

Two Ravinia Drive, Suite 610
Atlanta, GA  30346
Telephone: (770) 399-6450
kjbahr@masonlawfirm.net

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**Atlanta Division**

| | | |
|---|---|---|
| **Hartford Fire Insurance** | ) | |
| **Company,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action** |
| **v.** | ) | **File No. 1:10-CV-3063-RLV** |
| | ) | |
| **Merritt & Tenney LLP, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### CERTIFICATE OF SERVICE

I certify that ***Defendant James F. Tenney's Motion for Partial Summary Judgment against Plaintiff as to Counts I, II, and III of Tenney's Counterclaim*** was electronically filed with the Clerk of Court using the CM/ECF system, which will automatically send electronic mail notification of such filing to the Parties via their counsel of record listed below, on this 19th day of November, 2010.

Allen L. Broughton, Esq.
ALLEN L. BROUGHTON, P.C.
305 West Wieuca Road, N.E.
Atlanta, GA  30342

Richard L. Robbins, Esq.
ROBBINSFREED LLC
999 Peachtree Street, N.E., Suite 1120
Atlanta, GA  30309

Philip W. Savrin, Esq.
FREEMAN, MATHIS & GARY LLP
100 Galleria Parkway, Suite 1600
Atlanta, GA  30339

**MASON BAHR LLP**

/s/ Kevin J. Bahr

Kevin J. Bahr, Esq.
Georgia Bar No. 031555

Two Ravinia Drive, Suite 610
Atlanta, GA  30346
Telephone: (770) 399-6450
kjbahr@masonlawfirm.net