## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |  |
|---|---|---|
| **HARTFORD FIRE INSURANCE COMPANY,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **CIVIL ACTION FILE NO.:** <br> **1:10-CV-3063-RLV** |
| | ) ) | |
| **MERRITT & TENNEY, LLP;** <br> **MERRITT WATSON, LLP;** <br> **JAMES F. TENNEY; ELAINE** <br> **PELTON and DEAN PELTON,** | ) ) ) ) | |
| **Defendants.** | ) ) | |

### PLAINTIFF'S MOTION FOR JUDGMENT
### ON THE PLEADINGS AS TO MERRITT & TENNEY, LLP AND
### MERRITT WATSON, LLP AND BRIEF IN SUPPORT

Plaintiff Hartford Fire Insurance Company ("Hartford") moves for judgment

on the pleadings pursuant to Fed.R.Civ.P. 12(c) as to the absence of coverage for

claims asserted against Defendants Merritt & Tenney, LLP ("M&T") and Merritt

Watson, LLP ("MW") in a lawsuit filed by Defendants Elaine Pelton and Dean

Pelton.   Because the preliminary question of a defense duty is based on the

allegations of liability and the language of the policy, discovery has been stayed to

allow the Court to resolve whether the allegations trigger a defense duty.   For the

3347194_1

reasons addressed in this brief, Hartford's motion as to the law firms should be granted.[1]

## I.      Introduction

Elaine Pelton and her husband Dean Pelton sued James F. Tenney; Tenney's former law firm M&T; and MW (a putative successor to M&T), alleging that when Elaine was employed as a legal secretary M&T, Tenney, then a partner in M&T, placed a camera under Elaine's desk aimed at her genitalia.  The Peltons claim that Tenney sexually harassed Elaine and that M&T and/or MW negligently supervised Tenney and are liable for Tenney's conduct under agency principles.

M&T and MW sought coverage for the Peltons' complaint under a commercial general liability insurance policy Hartford issued to Merritt & Tenney.  Hartford explained that there is no coverage for the claims the terms of the policy do not cover allegations of harassment in the workplace or negligent supervision of an employee who harasses an employee in the workplace as described in the complaint.  Hartford agreed to defend M&T and MW under a full reservation of rights on specific terms.  M&T and MW rejected the terms in Hartford's proposal

---

[1]      By separate motion, Hartford addresses the absence of coverage for the claims asserted against James F. Tenney.  The arguments set forth here in apply equally to the extent coverage for M&T includes coverage for Tenney as a partner.

but have agreed to a defense under reservation of rights.  (Complaint, ¶ 14 & Exhs. C-1 and C-2).

Hartford brought this action seeking a declaratory judgment that it does not owe coverage for claims asserted against M&T and MW in the underlying liability case.  As will be discussed in more detail below, the claims against M&T and MW are not susceptible to coverage because no allegation against M&T or MW triggers the insuring agreement, and because exclusions for employment-related practices, and for discrimination or humiliation committed by or at the direction of a partner of M&T, would bar coverage in any event.

## II.   <u>The Complaint and Policy</u>

### A.   <u>Allegations In Underlying Lawsuit</u>

Elaine Pelton and her husband Dean Pelton sued M&T, MW and Tenney in the State Court of Cobb County where it was assigned Civil Action No. 10-A-7442-5.  (Complaint, ¶ 11 & Exh. B).  The Peltons allege that M&T and MW are law firms organized as partnerships, with MW being formed on July 1, 2010 as a successor partnership to M&T.   (Complaint, ¶¶ 2, 3).  They allege that on [date], Elaine was employed as a legal secretary by M&T when she discovered that Tenney, a partner of M&T, had placed a camera under her desk aimed at her genitalia.  They claim the placement of the camera was illegal and an "unlawful

touching" that has caused her mental stress and anguish.  The Peltons allege that their counsel informed M&T's managing partners – including Bill Merritt, Tenney, and Lex Watson – of the surveillance camera event the day after it occurred.  M&T responded that none of the partners were aware of the activities and that it appeared to be the work of someone with access to the building.  The Peltons further allege that Tenney was arrested for the crime of unlawful surveillance as a result of this conduct. (Complaint, ¶ 24).  Dean Pelton seeks to recover for loss of support, services and companionship as a result of Elaine Pelton's alleged injuries. (Complaint, ¶¶ 12, 23 & Exh. B, at ¶¶ 47-48).

With respect to the law firms, the Peltons allege that M&T and MW are liable under agency principles for Tenney's actions and for wrongful hiring, training, retaining and supervising Tenney and the employees and for failing to provide a safe and congenial workplace. (Complaint, Exh. B, at ¶¶ 38-41).  They seek compensatory and punitive damages against all defendants as well as legal expenses. (Complaint, ¶ 13 & Exh. B, at ¶¶ 61-62).

### B.    The Policy

Hartford issued policy number 20 SBA TE1805 issued to M&T as the named insured for the period July 1, 2009 to July 1, 2010.  (Complaint, ¶ 16 & Exh. E).  The policy includes M&T's partners as insureds "but only with respect to

the conduct of [M&T's] business." (Complaint, ¶ 17 & Exh. E, at § C(1)(b)).   The policy further defines "insured" to include organizations that M&T acquires or forms "other than a partnership, joint venture or limited liability company and over which [M&T] maintains financial interest of more than 50% of the voting stock … if there is no other similar insurance available."   Coverage is not afforded, however, for "bodily injury" that occurred before M&T acquired or formed the organization or for "personal or advertising injury" that arises out of an "offense" committed before M&T acquired or formed the organization. (Complaint, ¶ 18 & Exh. E, at § C(3)(b)).

The Business Liability Coverage Form of the policy provides coverage for "bodily injury," "property damage," and for "personal and advertising injury."[2] "Bodily injury" and is defined as follows:

**5.**   "Bodily injury" means physical:

**a.**   Injury;
**b.**   Sickness; or
**c.**   Disease

Sustained by a person and, if arising out of the above, mental anguish or death at any time.

---

[2] Neither M&T nor MW contends that the Pelton complaint alleges any "property damage," so those provisions are not included in this brief.

(Complaint, ¶ 20 & Exh. E, at § G(5)).  To be covered by the policy, the "bodily injury" must be caused by an "occurrence" defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Complaint, ¶ 20 & Exh. E, at § A(1)(b)(1)(a), G(16)).  "Personal and advertising injury" must result from an "offense" committed during the policy period.  "Offenses" include:

       **a.**      False arrest, detention or imprisonment;

       **b.**      Malicious prosecution;

       **c.**      The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that the person occupies, committed by or on behalf of its owner, landlord or lessor;

       **d.**      Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

       **e.**      Oral, written or electronic publication of material that violates a person's right of privacy;

       **f.**      Copying in your "advertisement", a person's or organization's "advertising idea" or style of "advertisement";

       **g.**      Infringement of copyright, slogan, or title of any literary or artistic work, in your "advertisement"; or

       **h.**      Discrimination or humiliation that results in injury to the feelings or reputation of a natural person.

(Complaint, ¶ 21 & Exh. E, at § G(17)).

Coverage for "bodily injury" as well as "personal and advertising injury" is limited by exclusions.  As discussed below, the exclusions relevant to this case include employment-related injuries and "personal or advertising injury" arising from conduct expected and/or committed by a partner of M&T.  The absence of coverage under the relevant provisions of the policy is addressed in detail below.

### III.   ARGUMENT AND CITATION OF AUTHORITY

The initial inquiry in any liability coverage case is whether the insurer has a duty to defend.  Substantively, the existence of a duty to defend turns on the language of the insurance contract and the allegations of the complaint asserted against the insured.  City of Atlanta v. St. Paul Fire & Marine Ins. Co., 231 Ga. App. 206, 207, 498 S.E.2d 782, 784 (1998). When the liability complaint does not assert claims within the terms of coverage, therefore, the insurer is justified in refusing to defend the lawsuit.  Colonial Oil Indus. v. Underwriters, 268 Ga. 561, 562, 491 S.E.2d 337, 339 (1997).

An exception exists if "the insured notifies the insurer of factual contentions that would place the claim within policy coverage," in which case the insurer should investigate so that its decision is based on the "true facts."  Id.  To trigger this additional responsibility, the insured must come forward with facts; he cannot

simply "reinterpret" the allegations to create coverage.  <u>Shafe v. American States</u> <u>Ins. Co.</u>, 288 Ga. App. 315, 318-19, 653 S.E.2d 870, 874 (2007).  The duty cannot arise from facts not brought to the insured's attention at the time the case is tendered for a defense; otherwise, the insurer "would have to monitor the case throughout to be sure that its duty did not arise later.  Such a burden would be intolerable."  <u>Great Am. Ins. Co. v. McKemie</u>, 244 Ga. 84, 85, 259 S.E.2d 39, 40 (1979).  And, because the duty to defend is broader than the duty to indemnify, an insurer is entitled to a declaration of no coverage if a contractual defense obligation is not triggered by the allegations.  <u>See</u> <u>York Ins. Co. v. Houston Wellness Center</u>, 261 Ga. App. 854, 855, 583 S.E.2d 903 (2003) (no duty to defend or indemnify where allegations fall within exclusion).  <u>See also</u>  <u>Southern Ins. Co. v. Dowse</u>, 278 Ga. 674, 676, 605 S.E.2d 27, 29 (2004) ("if the underlying claim is outside the policy's scope of coverage, then SGIC's refusal to indemnify or defend was justified").

Lastly, whether policy provisions give rise to a defense duty is a legal question for the court to resolve.  <u>See</u> <u>ALEA London Ltd. v. Woodcock</u>, 286 Ga. App. 572, 576-77, 649 S.E.2d 740, 744-46 (2007) (finding trial court erroneously submitted policy interpretation to the jury); <u>Sewell v. Hull/Storey Dev., LLC</u>, 241 Ga. App. 365, 366-67, 526 S.E.2d 878, 880 (1999) ("a contract should be

construed by the court where the language is undisputed, but the meaning of that language is in dispute").

With these legal standards in mind, Hartford next discusses the Peltons' claims to show that the allegations of fact lie outside the terms of coverage.

### A.   MW Is Not An Insured

MW is not a named insured on the policy; M&T is.   Under the Peltons' allegations, MW was a successor partnership to M&T, created after the policy period incepted and after the events at issue in the Peltons' complaint.   The policy does include certain organizations that M&T – the named insured -- acquires or forms provided those organizations are not "a partnership, joint venture or limited liability company," among other conditions.   Here, MW is alleged to be a partnership; consequently, even if it was "formed" by M&T (which is not clear from the allegations), it would not meet the definition of an "insured." (Complaint, ¶ 18 & Exh. E, at § C(3)).

Furthermore, to the extent that MW is insured as an organization formed after the policy incepted, coverage would not be afforded for "bodily injury" that occurred before M&T formed MW or for "personal or advertising injury" that arises out of an "offense" committed before M&T formed MW. (Complaint, ¶ 18 & Exh. E, at § C(3)(b)).   In this case, injuries and conduct alleged took place

before MW came into existence on or about July 1, 2010. (Complaint, ¶ 3 & Exh. B, at ¶ 6)).

MW may argue that it is merely M&T with a new name.  But whether MW is considered a successor, a new entity, or even a relabeled M&T, does not change the coverage analysis. Either MW is not an insured under the policy or, if it is, it is subject to the same dispositive provisions regarding coverage as M&T, and as explained below.

### B.   No Coverage is Triggered for "Bodily Injury"

As quoted above, the policy in pertinent part covers "bodily injury" caused by an "occurrence" and is subject to exclusions.  No coverage is afforded here for a number or reasons.  First, bodily injury requires a <u>physical</u> impact which is not alleged here.   Second, harassment claims are not an "occurrence" under the relevant case law.   Lastly, even if there were "bodily injury" caused by an "occurrence," the policy excludes coverage for claims that are related to employment.  Because the Peltons' claims arise from Elaine's work environment, coverage would be excluded on that basis as well.

### 1.  "Bodily Injury" Facts are Not Alleged

As quoted above, the policy defines "bodily injury" as physical injury, sickness or disease "[s]ustained by a person and, if arising out of the above, mental

anguish or death at any time." (Complaint, ¶ 21 & Exh. E, at § G(5)).   In

Presidential Hotel v. Canal Insurance Company, 188 Ga. App. 609, 611, 373

S.E.2d 671 (1988), the plaintiffs asserted that their supervisor at work sexually

harassed them and sought "mental damages."   In finding that no "bodily injury"

was alleged, the court explained that "[u]sed in an insurance policy, the term

'bodily injury' means just that – 'bodily injury.'  It pertains to physical injury to

the body.  It does not include non-physical, emotional or mental harm." Id. at 611.

The Court of Appeals added that bodily injury "cannot be equated with the broader

term 'personal injury.'" Id.  Numerous cases have upheld that mental anguish,

humiliation, and emotional distress do not constitute "bodily injury" under an

insurance policy. See, e.g., O'Dell v. St. Paul Fire & Marine Insurance Company,

223 Ga. App. 578, 579-580, 478 S.E.2d 418 (1996) (nonphysical sexual

harassment causing emotional distress not "bodily injury"); see also Auto-Owners

Ins. Co. v. Robinson, 2006 WL 2583356, at *2-3 (M.D. Ga. Sept. 5, 2006); Bates

v. Guaranty Nat'l Ins. Co., 223 Ga. App. 11, 13, 476 S.E.2d 797 (1996)

(nonphysical injuries do not trigger duty to defend under "bodily injury" provisions

of insurance contract); Brayman v. Allstate Ins. Co., 212 Ga. App. 96, 441 S.E.2d

285 (1994) (same).

Elaine Pelton's claims of emotional distress do not meet the definition of "bodily injury."   The analysis does not change simply because the Peltons conclusorily allege that Tenney's placement of the camera was an "unlawful touching" and that "any unlawful touching is a physical injury." (Complaint, Exh. B, at ¶¶ 32-33).  The duty to defend is based on the <u>facts</u> alleged by the complaint and not the interpretation of those facts.  <u>Shafe v. American States Ins. Co.</u>, 288 Ga. App. 315, 318-19, 653 S.E.2d 870, 874 (2007) (finding a defense duty cannot be created "simply by 'reinterpreting' the factual allegations made so as to come within the scope of the insurance contract").  As the allegations of fact make clear, Elaine heard the surveillance camera fall on her Dictaphone foot pad, and that discovery has caused her mental pain and suffering, anguish and severe emotional distress for which she is seeking damages.  (Complaint, Exh. B, at ¶¶ 7, 35, 37, 44).  The use of the conclusory term "touching," wholly belied by the facts pled in the complaint, does not create a "bodily injury" under Georgia law.

Similarly, Dean Pelton's claims for loss of consortium do not qualify as "bodily injury."  <u>Bartlett v. American Alliance Ins. Co.</u>, 206 Ga.App. 252, 827, 424 S.E.2d 825 (1993) ("[a] loss of consortium claim is based not upon injury to the body of the claimant but instead solely upon the claimant's property right

arising out of the marriage relationship to the love, companionship, and conjugal affection of the spouse.").

Because the factual allegations do not meet the policy definition of the term, no defense duty is triggered for "bodily injury."

### 2.    "Occurrence" is Not Alleged Against Law Firms

In addition to finding no bodily injury was alleged for the claims of workplace harassment in O'Dell, the Court of Appeals also found no "occurrence" was alleged where the employee alleged the employer negligently retained the harasser.  As the court explained:

> O'Dell also claims that St. Paul must defend the lawsuit on behalf of DRACS and DRA because Gilleland alleged facts on which a cause of action for negligent retention of O'Dell could be based. We note initially that the policy does not recite that it covers losses due to negligent retention. But even if this were true, the complaint does not allege that Gilleland suffered bodily injuries, and even assuming she *did* suffer bodily injuries, she did not allege that those injuries were caused by an accident and thus were brought about by an "event."

223 Ga. App. at 580, 478 S.E.2d at 420 (emphasis in original).  Significantly, "event" in O'Dell had an identical definition as "occurrence" in the Hartford policy.  See also SCI Liquidating Corp. v. Hartford Fire Ins. Co., 181 F.3d 1210, 1216 (11th Cir. 1999) (applying O'Dell to find that negligence claims against an employer for sexual harassment and negligent hiring and retention are not an

"occurrence");[3] <u>Auto-Owners</u>, 2006 WL 2583356, at *3 n.1 (finding no "occurrence" in a race discrimination case because "<u>O'Dell</u> specifically discussed a claim for negligent retention and did not find that mere use of the word 'negligent' in a complaint causes the claim to fall under the definition of 'occurrence'"); <u>see also</u> <u>Presidential Hotel</u>, 188 Ga. App. at 609.   To the extent that knowledge of Tenney is attributed to the law firms because Tenney was a partner of M&T, <u>Presidential Hotel</u> holds that no coverage exists for claims against a corporate employer for harassment by a supervisor who "acting individually and as an agent of the hotel."   As the Court of Appeals there explained, such conduct does not allege an "accident" which is necessary to satisfy the definition of an "occurrence". 188 Ga. App. at 609-11.

---

[3] In answering a certified question in <u>SCI</u>, the Supreme Court of Georgia found coverage under an umbrella policy that covered "personal injury" under a definition of "occurrence" that differed from the definition in the CGL policy (in which <u>no</u> coverage was found).  272 Ga. 293, 526 S.E.2d 555 (2000).  As set forth in the Eleventh Circuit's opinion, the CGL policy defined "occurrence" to be an "accident," whereas the umbrella policy that was construed in the Supreme Court decision defined the term to be a personal injury "offense."  181 F.3d at 1213.  The fact that coverage was found under the umbrella policy, therefore does not alter the absence of a covered "occurrence" under the same definition that exists in the Hartford policy in this case.  Moreover, the question answered by the Supreme Court of Georgia construed an <u>exclusion</u> within the umbrella policy that was not connected to the "occurrence" definition in the Hartford policy in this case or the exclusions presented in this brief.

In this case, Tenney intentionally placed the surveillance camera under Elaine's desk.  That Tenney was a partner of M&T underscores the lack of coverage in this case.  Based on O'Dell and its progeny, the claims against the law firms arising from Tenney's conduct (including negligent retention and supervision of Tenney and the related negligence claims) likewise are not covered as an "occurrence."  Even if the Peltons alleged "bodily injury," therefore, their claims against the law firms would not be covered under the Hartford policy.

### 3.    Employment-Related Practices Exclusion

The policy contains an Employment-Related Practices Exclusion that bars coverage for "bodily injury" or "personal and advertising injury" to a person arising out of "Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at the person." (Complaint, ¶ 22 & Exh. E, at § B(1)(r)(1)(a)).  This exclusion applies explicitly to the "spouse" of anyone who sustained the excluded injury. (Complaint, ¶ 22 & Exh. E, at § B(1)(r)(2)).

Here, the Peltons seek damages for injuries that fall squarely within this exclusion, including "harassment" and "humiliation" that arose in Elaine's work environment.  Under the unambiguous terms of this exclusion, there would be no

coverage.   Because the exclusion applies expressly to a spouse's claims, it precludes coverage for Dean Pelton's consortium claim is as well.

Even if the Law Firms assert that Tenney placed the surveillance camera under Elaine's desk to supervise an employee, the coverage analysis would not change.   First, any such explanation would be a reinterpretation of the allegations in the complaint and not different facts.   As the Court of Appeals made clear in Shafe,

> the applicable law . . . does not allow an insured to create coverage simply by "reinterpreting" the factual allegations made so as to come within the scope of the insurance contract. Rather, the rule requires that, if the complaint fails to allege facts that bring the claim within policy coverage, a duty to defend may nevertheless exist where the insured informs the insurer of additional facts related to the claim that would entitle him to a defense of the same under the policy.

288 Ga. App. at 318-19, 653 S.E.2d at 874.   Any assertion that Tenney did not intend to humiliate or harass Elaine is simply a reinterpretation of the allegations that cannot create coverage under the policy.   Second, even if Tenney placed the surveillance camera pursuant to his supervisory role, his conduct would be all the more related to Elaine's employment thereby triggering the Employment-Related Practices Exclusion.   Either way, the exclusion precludes coverage for the claims asserted by the Peltons.

**D.**   **No Coverage for "Personal and Advertising Injury"**

As discussed above, the policy covers "personal and advertising injury" that results from enumerated "offenses" committed during the policy period.   For purposes of this motion, Hartford assumes that the allegations fall within the offense of "[d]iscrimination or humiliation that results in injury to the feelings or reputation of a natural person."   Several exclusions from coverage for the offense apply, however.

First, the policy excludes coverage for "personal and advertising injury" "arising out of discrimination or humiliation committed by or at the direction of any . . . partner or member of the Insured."   Tenney was a partner of M&T, "the Insured."   (Complaint, ¶ 22 & Exh. E at § (B)(1)(p)(16)).   Further, Georgia law construes the phrase "arising out of" to exclude coverage if the described conduct was the "cause-in-fact" of the injury.   Barrett v. Nat'l Union Ins. Co. of Pittsburgh, 304 Ga. App. 314, 321, 696 S.E.2d 326, 332 (2010).   Because any "personal and advertising injury" resulting from the offense of "discrimination or humiliation" was the caused-in-fact by "discrimination or humiliation committed by or at the direction of [Tenney]," coverage is precluded by this exclusion.

Second, to the extent the Peltons seek damages arising from Elaine's employment by M&T, the policy excludes coverage for "personal and advertising"

injury" under the identical "employment related practices" exclusion that is discussed above with respect to the "bodily injury" provisions. Discrimination, humiliation, or harassment of an employee is expressly excluded under the Policy as discussed above.

Lastly, the policy excludes coverage for injury arising out of an offense committed by the insured with the expectation of inflicting "personal and advertising injury." (Complaint, ¶ 22 & Exh. E, at § B(1)(a)(1)).   As discussed above and in the contemporaneously-filed motion concerning the claims against Tenney individually, placing a surveillance camera under an employee's desk would be expected to inflict injury. Tenney's intentional act of placing the camera under Elaine's desk would be the "cause-in-fact" of her injuries, thereby triggering the exclusion. Barrett, *supra*. Because any claim against the law firm arises from that intended act, the exclusion for expected "personal and advertising injury" bars coverage.

### III.   CONCLUSION

The law firms seek coverage for alleged acts of harassment to an employee, which on the face of the complaint are not "accidental;" are not "bodily injury;" happened in the workplace to an employee; and were caused by a partner of the named insured. As Georgia law makes clear, the claims against the law firms are

not covered under Hartford's policy.   Hartford's Motion for Judgment on the

Pleadings should be granted, and the Court should issue a declaration that Hartford

does not have a duty to defend or indemnify Tenney or the Law Firms in

connection with the claims asserted against them by the Peltons in the underlying

lawsuit.

Respectfully Submitted,

**FREEMAN MATHIS & GARY, LLP**


/s/ Philip W. Savrin_____
Philip W. Savrin
Georgia Bar No. 627836

Attorney for Plaintiff Hartford Fire Insurance
Company

100 Galleria Parkway
Suite 1600
Atlanta, Georgia 30339-5948
T: 770-818-0000
F: 770-937-9960
E: psavrin@fmglaw.com
pws1468

## <u>CERTIFICATE OF FONT SIZE</u>

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing has been prepared in compliance with Local Rule 5.1(B) in Times New Roman 14 point type face.

**FREEMAN MATHIS & GARY, LLP**


\s\ Philip W. Savrin_____
Philip W. Savrin
Georgia Bar No. 627836
psavrin@fmglaw.com


Attorneys for Hartford Fire Insurance Company

100 Galleria Parkway
Suite 1600
Atlanta, Georgia  30339-5948
T – 770.818.0000
F – 770.937.9960

## <u>CERTIFICATE OF SERVICE</u>

I have this day served the foregoing **PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS AS TO MERRITT & TENNEY, LLP AND MERRITT WATSON, LLP AND BRIEF IN SUPPORT** to the Clerk of Court using the CM/ECF system which will automatically send electronic mail notification of such filing to counsel of record who are CM/ECF participants and mailed by United States Postal Service, first class, postage prepaid, a paper copy of the same document to counsel of record who are non-CM/ECF participants as follows:

Kevin J. Bahr, Esq.
MASON BAHR LLP
Two Ravinia Drive, Suite 610
Atlanta, GA  30346

Richard L. Robbins, Esq.
ROBBINS FREED LLC
999 Peachtree Street, N.E.,
Suite 1120
Atlanta, GA  30309

Anthony L. Cochran, Esq.
CHILIVIS COCHRAN LARKINS
& BEVER, LLP
3127 Maple Drive, N.E.
Atlanta, GA 30305

Allen L. Broughton, Esq.
ALLEN L. BROUGHTON, P.C.
305 West Wieuca Road, N.E.
Atlanta, GA  30342

This 6th day of December, 2010.

*s/ Philip W. Savrin*
Philip W. Savrin
Georgia Bar No. 627836
psavrin@fmglaw.com

FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway
Suite 1600
Atlanta, Georgia  30339-5948
(770) 818-0000 (telephone)
(770) 937-9960 (facsimile)