IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| HARTFORD FIRE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION FILE NO.: 1:10-CV-3063-RLV |
| MERRITT & TENNEY, LLP; MERRITT WATSON, LLP; JAMES F. TENNEY; ELAINE PELTON and DEAN PELTON, | ) ) ) ) ) | |
| Defendants. | ) | |

**PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS
AS TO JAMES F. TENNEY AND BRIEF IN SUPPORT**

Plaintiff Hartford Fire Insurance Company ("Hartford") moves for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c) as to the absence of coverage for claims asserted against Defendant James F. Tenney in a lawsuit filed by Defendants Elaine Pelton and Dean Pelton. Because the preliminary question of a defense duty is based on the allegations of liability and the language of the policy, discovery has been stayed to allow the Court to resolve whether the allegations

trigger a defense duty.  For the reasons addressed in this brief, Hartford's motion as to Tenney should be granted.[1]

## I.    <u>Introduction and Procedural History</u>

Elaine Pelton alleges that she was employed as a legal secretary for the law firm Merritt & Tenney, LLP ("M&T") when she discovered that Tenney -- who was a partner of the firm – had placed a camera under her desk aimed at her genitalia.  She and her husband filed a lawsuit in State Court of  Cobb County seeking damages for injuries sustained as a result of Tenney's conduct, naming Tenney and M&T as defendants along with Merritt Watson, LLP, the putative successor law firm to M&T.  Tenney sought coverage for the Peltons' claims under a commercial general liability insurance policy issued by Hartford to M&T as the named insured which, in certain circumstances, provides insurance for M&T's partners.  Hartford informed Tenney that the claims did not fall within the insuring agreement and several exclusions would apply in any event.  Separately, Hartford agreed to defend M&T and MW under reservation of rights.

The coverage claims between Hartford and Tenney concern whether the policy issued to M&T applies to Tenney's conduct.  As discussed below, the policy responds to accidental conduct lacking foresight or design and not the intentional

---

[1]    By separate motion, Hartford addresses the absence of coverage for the claims asserted against Merritt & Tenney, LLP and Merritt Watson, LLP.

and purposeful type of behavior alleged here.  Even then, the coverage afforded for bodily injury requires a physical injury as the precipitating harm as opposed to the emotional harm alleged by the Peltons.  Moreover, the policy excludes coverage for injuries to an employee of M&T or caused by employment-related practices. Fundamentally, therefore, the policy does not apply to the claims asserted against Tenney.

For the reasons discussed in more detail below, therefore, Hartford's motion should be granted.

## II.    The Complaint and Policy

### A.    Complaint and Procedural History

Elaine Pelton and her husband Dean Pelton sued Merritt & Tenney LLP ("M&T"), Merritt Watson LLP ("MW") and Tenney in the State Court of Cobb County where it was assigned Civil Action No. 10-A-7442-5.  (Complaint, ¶ 11 & Exhibit B).  The Peltons allege that on May 10, 2010, Elaine was employed as a legal secretary by M&T when she discovered that Tenney, a partner of M&T, had placed a camera under her desk aimed at her genitalia.  They claim the placement of the camera was illegal and an "unlawful touching" that has caused her mental stress and anguish.  The Peltons further allege that Tenney was arrested for the crime of unlawful surveillance as a result of this conduct. (Complaint, ¶ 24).  Dean

Pelton seeks to recover for loss of support, services and companionship as a result of Elaine Pelton's alleged injuries. (Complaint, ¶¶ 12, 23 & Exhibit B, at ¶¶ 47-48).[2]  The Peltons seek compensatory and punitive damages against all defendants as well as legal expenses. (Complaint, ¶ 13 & Exhibit B, at ¶¶ 61-62).  Tenney tendered the Pelton complaint to Hartford.

Hartford denied coverage and named Tenney as an interested party in this declaratory judgment action. Tenney responded by asserting a counterclaim against Hartford, seeking coverage.

**B.    The Policy**

Hartford issued policy number 20 SBA TE1805 to M&T as the named insured for the period July 1, 2009 to July 1, 2010.  (Complaint, ¶ 16 & Exhibit E). The policy includes M&T's partners (including Tenney) as insureds "but only with respect to the conduct of [M&T's] business." (Complaint, ¶ 17 & Exhibit E, at § C(1)(b)).

---

[2]  In addition to alleging wrongful conduct by Tenney, the Peltons contend that M&T and MW are liable under agency principles for Tenney's actions; for wrongful hiring, training, retaining and supervising Tenney; and for failing to provide a safe and congenial workplace.  These claims are not covered for reasons explained in a separate motion filed contemporaneously herewith.

The Business Liability Coverage Form of the policy provides coverage for "bodily injury," "property damage," and for "personal and advertising injury."[3] "Bodily injury" is defined as follows:

> **5.** "Bodily injury" means physical:
>
> **a.** Injury;
> **b.** Sickness; or
> **c.** Disease
>
> Sustained by a person and, if arising out of the above, mental anguish or death at any time.

(Complaint, ¶ 20 & Exhibit E, at § G(5)). To be covered by the policy, the "bodily injury" must be caused by an "occurrence" defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Complaint, ¶ 20 & Exhibit E, at §§ A(1)(b)(1)(a), G(16)). "Personal and advertising injury" must result from an "offense" committed during the policy period. "Offenses" include:

> **a.** False arrest, detention or imprisonment;
>
> **b.** Malicious prosecution;
>
> **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that the person occupies, committed by or on behalf of its owner, landlord or lessor;

---

[3] Tenney does not contend that the Pelton complaint alleges any "property damage," so Hartford does not address those provisions in this brief.

**d.**      Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.**      Oral, written or electronic publication of material that violates a person's right of privacy;

**f.**      Copying in your "advertisement", a person's or organization's "advertising idea" or style of "advertisement";

**g.**      Infringement of copyright, slogan, or title of any literary or artistic work, in your "advertisement"; or

**h.**      Discrimination or humiliation that results in injury to the feelings or reputation of a natural person.

(Complaint, ¶ 21 & Exhibit E, at § G(17)).   Coverage for "bodily injury" as well as "personal and advertising injury" is limited by exclusions.  As discussed below, the exclusions relevant to this case are for intended acts; for employment-related injuries; and for "personal or advertising injury" committed by a partner of M&T. These exclusions are addressed in more detail below.

### III.   <u>ARGUMENT AND CITATION OF AUTHORITY</u>

The liability claims arise from the intentional decision by Tenney to place a camera under the desk of Elaine, his employee and subordinate, at her workplace. Elaine alleges emotional and mental distress at discovering the camera at her workplace.  Tenney had no physical contact with Elaine.  The policy issued to

M&T, meanwhile, covers Tenney only to the extent that he acted in furtherance of M&T's business.   Under the case law, even if harassment takes place at the workplace, it is not part of the business to harass.   Tenney's conduct, therefore, does not qualify him to be an insured under the policy issued to M&T.

To the extent that Tenney is an insured under the policy, there can be no coverage because absent physical contact with Elaine, there can be no "bodily injury" as that term is defined by the policy and pursuant to Georgia law.   Further, because Tenney placed the camera intentionally under Elaine's desk and because injury is expected from such improper conduct, there could be no coverage for bodily injury even if a physical assault had occurred.   Moreover, claims by employees are excluded for purposes of both "bodily injury" and "personal and advertising injury."   Stated otherwise, the policy does not cover injuries to employees during the course of employment or for employment-related practices (such as harassment) that are not part of the employment.   Finally, to the extent Elaine's claims are considered "personal or advertising injury," the policy additionally excludes coverage for claims arising from harassment by a partner of M&T such as Tenney.

Because the question of coverage depends on a defense duty being triggered in the first instance, Hartford first will address the relevant legal standard involved

and then discuss the substantive provisions of the policy to demonstrate that the policy affords no coverage to Tenney.

### A.    The Standard for Assessing Coverage

The initial inquiry in any liability coverage case is whether the insurer has a duty to defend.  Substantively, the existence of a duty to defend turns on the language of the insurance contract and the allegations of the complaint asserted against the insured.  City of Atlanta v. St. Paul Fire & Marine Ins. Co., 231 Ga. App. 206, 207, 498 S.E.2d 782, 784 (1998). When the liability complaint does not assert claims within the terms of coverage, therefore, the insurer is justified in refusing to defend the lawsuit.  Colonial Oil Indus. v. Underwriters, 268 Ga. 561, 562, 491 S.E.2d 337, 339 (1997).

An exception exists if "the insured notifies the insurer of factual contentions that would place the claim within policy coverage," in which case the insurer should investigate so that its decision is based on the "true facts."  Id.  To trigger this additional responsibility, the insured must come forward with facts; he cannot simply "reinterpret" the allegations to create coverage.  Shafe v. American States Ins. Co., 288 Ga. App. 315, 318-19, 653 S.E.2d 870, 874 (2007).  The duty cannot arise from facts not brought to the insured's attention at the time the case is tendered for a defense; otherwise, the insurer "would have to monitor the case

throughout to be sure that its duty did not arise later.  Such a burden would be intolerable."  Great Am. Ins. Co. v. McKemie, 244 Ga. 84, 85, 259 S.E.2d 39, 40 (1979).  And, because the duty to defend is broader than the duty to indemnify, an insurer is entitled to a declaration of no coverage if a contractual defense obligation is not triggered by the allegations.  See York Ins. Co. v. Houston Wellness Center, 261 Ga. App. 854, 855, 583 S.E.2d 903 (2003) (no duty to defend or indemnify where allegations fall within exclusion).  See also  Southern Ins. Co. v. Dowse, 278 Ga. 674, 676, 605 S.E.2d 27, 29 (2004) ("if the underlying claim is outside the policy's scope of coverage, then SGIC's refusal to indemnify or defend was justified").

Lastly, whether policy provisions give rise to a defense duty is a legal question for the court to resolve.  See ALEA London Ltd. v. Woodcock, 286 Ga. App. 572, 576-77, 649 S.E.2d 740, 744-46 (2007) (finding trial court erroneously submitted policy interpretation to the jury); Sewell v. Hull/Storey Dev., LLC, 241 Ga. App. 365, 366-67, 526 S.E.2d 878, 880 (1999) ("a contract should be construed by the court where the language is undisputed, but the meaning of that language is in dispute").

With these legal standards in mind, Hartford next discusses the Peltons' claims to show that the allegations of fact lie outside the terms of coverage.

**B.**   <u>**Tenney Is Not An Insured**</u>

Under the policy, Tenney is an insured only to the extent he was acting as a partner in the conduct of the insured law firm's business.  (Complaint, ¶ 17 & Exhibit E, at § C(1)(b)).  The law is well settled, however, that claims of sexual harassment or invasion of privacy are personal in nature <u>even when they occur in the workplace</u> as they are not related to the employee's duties.  <u>See</u> <u>Travis Pruitt & Assocs., P.C. v. Hooper</u>, 277 Ga. App. 1, 2-3, 625 S.E.2d 445 (2005) (sexual harassment claim did not arise out of employment or conduct of employer's business).  The allegations that Tenney installed a spy camera underneath Pelton's desk and adjusted it several times to make sure it was pointed at her genitalia is purely personal and lies outside the scope of Tenney's duties as a partner of M&T.  Because these allegations did not relate to the conduct of M&T's business as a matter of law Tenney does not meet the definition of an insured.

In an effort to trigger coverage under <u>Colonial Oil</u>, Tenney has contended that his conduct was related to his supervision of Pelton.  But even if that contention were deemed a "true fact," it does not provide a basis for coverage under the policy.  If Tenney were acting within the conduct of M&T's business, then the Employment-Related Practices Exclusions discussed below would be triggered.  (Complaint, ¶ 22 & Exhibit E, at § B(1)(r)).

Whether Tenney was acting in his personal capacity or within the conduct of M&T's business is, for coverage purposes, irrelevant.  Neither the allegations of the Pelton complaint nor Tenney's position as to his motives constitute potentially covered conduct.  Accordingly, Tenney was not an insured under the policy with respect to the claims asserted against him in the liability complaint.

### C.   <u>No Coverage is Triggered for "Bodily Injury"</u>

As quoted above, the policy in pertinent covers "bodily injury" caused by an "occurrence" and is subject to exclusions.  No coverage is afforded here for a number or reasons.  First, bodily injury requires a <u>physical</u> impact which is not alleged here.  Second, an "occurrence" requires an accidental act, whereas Tenney intended to place the surveillance camera under Elaine's desk.  Under the case law, claims of harassment do not meet the definition of "occurrence" in the policy.  Third, injury would be expected to result from surreptitiously directing a surveillance camera at an employee's genitals, triggering an express exclusion under the policy.  Lastly, even if the complaint alleged "bodily injury" caused by an "occurrence" that was not expected or intended (which it does not), the policy excludes coverage for employment-related practices.  Coverage would be excluded on that basis as well.

### 1.  "Bodily Injury" Facts are Not Alleged

The policy defines "bodily injury" as physical injury, sickness or disease "[s]ustained by a person and, if arising out of the above, mental anguish or death at any time." (Complaint, ¶ 21 & Exhibit E, at § G(5)).  In <u>Presidential Hotel v. Canal Insurance Company</u>, 188 Ga. App. 609, 611, 373 S.E.2d 671 (1988), the plaintiffs asserted that their supervisor at work sexually harassed them and sought "mental damages."  In finding that no "bodily injury" was alleged, the court explained that "[u]sed in an insurance policy, the term 'bodily injury' means just that – 'bodily injury.'  It pertains to physical injury to the body.  It does not include non-physical, emotional or mental harm." <u>Id</u>. at 611.  The Court of Appeals added that bodily injury "cannot be equated with the broader term 'personal injury.'" <u>Id</u>.  Numerous cases have upheld that mental anguish, humiliation, and emotional distress do not constitute "bodily injury" under an insurance policy. <u>See</u>, <u>e.g.</u>, <u>O'Dell v. St. Paul Fire & Marine Ins. Co.</u>, 223 Ga. App. 578, 579-580, 478 S.E.2d 418 (1996) (nonphysical sexual harassment causing emotional distress not "bodily injury"); <u>see also</u> <u>Auto-Owners Ins. Co. v. Robinson</u>, 2006 WL 2583356, at *2-3 (M.D. Ga. Sept. 5, 2006) (no duty to defend under insurance contract because humiliation, embarrassment, and emotional distress as result of alleged discrimination, rather than physical injury, was not "bodily injury"); <u>Bates v. Guaranty Nat'l Ins. Co.</u>,

223 Ga. App. 11, 13, 476 S.E.2d 797 (1996) (nonphysical injuries do not trigger duty to defend under "bodily injury" provisions of insurance contract); Brayman v. Allstate Ins. Co., 212 Ga. App. 96, 441 S.E.2d 285 (1994) (same).

Under this definition, it is apparent that Elaine Pelton's claims of emotional distress do not meet the definition.  The analysis does not change simply because the Peltons conclusorily allege that Tenney's placement of the camera was an "unlawful touching" and that "any unlawful touching is a physical injury." (Complaint, Exhibit B, at ¶¶ 32-33).  The duty to defend is based on the facts alleged by the complaint and not the interpretation of those facts.  Shafe, 288 Ga. App. at 318-19, 653 S.E.2d at 874 (finding a defense duty cannot be created "simply by 'reinterpreting' the factual allegations made so as to come within the scope of the insurance contract").  As the allegations of fact make clear, Elaine heard the surveillance camera fall on her Dictaphone foot pad, and that discovery has caused her mental pain and suffering, anguish and severe emotional distress for which she is seeking damages.  (Complaint, Exhibit B, at ¶¶ 7, 35, 37, 44).  The use of the conclusory term "touching," wholly belied by the facts pled in the complaint, does not create a "bodily injury" under Georgia law.

Similarly, Dean Pelton's claims for loss of consortium do not qualify as "bodily injury."  Bartlett v. American Alliance Ins. Co., 206 Ga. App. 252, 827,

424 S.E.2d 825 (1993) ("[a] loss of consortium claim is based not upon injury to the body of the claimant but instead solely upon the claimant's property right arising out of the marriage relationship to the love, companionship, and conjugal affection of the spouse.").

Because the factual allegations do not meet the policy definition of the term, no defense duty is triggered for "bodily injury."

### 2.    "Occurrence" is Not Alleged Against Tenney

Even if the Peltons had alleged facts that met the "bodily injury" definition, their claims against Tenney would not be covered because Tenney's alleged conduct does not constitute an "occurrence" under the policy.  (See Complaint ¶ 20 & Exhibit E, at § G(16)) (defining "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions").  In insurance policies, "accident" means "an event which takes place without one's foresight or expectation or design."  Allstate Ins. Co. v. Grayes, 216 Ga. App. 419, 421, 454 S.E.2d 616, 618 (1995) (quoting O.C.G.A. § 1-3-3(2)). "An accident refers to an unexpected happening rather than one occurring through intention or design.  Acts could not be unexpected unless they were accidental." Southern Guar. Ins. Co. v. Phillips, 220 Ga. App. 461, 462, 469 S.E.2d 227 (1996).

Georgia courts have held that allegations of sexual harassment and related conduct are not accidents, but rather constitute intentional acts that fall outside the definition of an "occurrence."  See, e.g., SCI Liquidating Corp. v. Harford Fire Ins. Co., 181 F.3d 1210, 1216 (11th Cir. 1999) (construing CGL policy, holding that allegations of sexual harassment do not satisfy definition of "occurrence"); O'Dell, 223 Ga. App. at 580 (sexual harassment not an "accident"); Presidential Hotel, 188 Ga. App. at 611 (same). See also Auto-Owners, 2006 WL 2583356, at * 3 (alleged racial discrimination is, by its nature, intentional and thus not an "occurrence").  In this case, the Peltons conclusively allege that the injuries were caused by a surveillance camera being attached secretly to the underside of Elaine's desk with Velcro tape. (Complaint, Exhibit B, at ¶ 8).  According to the Peltons, the camera recorded Tenney installing the spy camera shortly after 6:30a.m. on May 10, 2010, adjusting it several times to ensure that it was pointed to where Ms. Pelton's genitalia would be when she sat in the chair, and looking underneath her desk to make sure that it was adequately taped to her desk. (Id. at ¶¶ 16-26).  The Peltons do not describe conduct that could even charitably be described as "accidental." Because the Peltons do not allege an unexpected happening, but instead conduct by intention or design, any "bodily injury" was not caused by an "occurrence."

### 3.     Exclusions Bar Coverage For "Bodily Injury"

Even if the claims constituted "bodily" injury" caused by an "occurrence",
several exclusions apply.

### a.     Injury Was Expected Or Intended By Tenney

Just as Tenney's actions could not be described as "accidental" within the
meaning of the policy's definition of "occurrence," his actions as described in the
complaint – deliberately placing the camera – were "expected or intended" to harm
the plaintiff.    The policy excludes coverage for "bodily injury" expected or
intended from the standpoint of the insured.    (Complaint, ¶ 22 & Exhibit E, at §
B(1)(a)).   Georgia construes this exclusion to apply if the insured acts with the
intent or expectation that . . . injury occur, even if the actual, resulting injury is
different either in kind or magnitude from that intended or expected."   Georgia
Farm Bureau Mut. Ins. Co. v. Purvis, 213 Ga.App. 239, 444 S.E.2d 109, 110
(1994) (quoting Stein, 172 Ga.App. at 813).  The exclusion if the insured acts with
"the intent or expectation of causing any injury, however slight."   Stein v.
Massachusetts Bay Ins. Co., 172 Ga. App. 811, 813, 324 S.E.2d 510 (1985)
(emphasis in original) (citation omitted).  Tenney could not have surreptitiously
installed a surveillance camera and pointed it at Ms. Pelton's genitalia without
intending or expecting injury to occur.

### b.    Employment-Related Practices Exclusion

The policy contains an Employment-Related Practices Exclusion that bars coverage for "bodily injury" or "personal and advertising injury" to a person arising out of "Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at the person." (Complaint, ¶ 22 & Exhibit E, at § B(1)(r)(1)(c)).  This exclusion applies explicitly to the "spouse" of anyone who sustained the excluded injury. (Complaint, ¶ 22 & Exhibit E, at § B(1)(r)(2)).

Here, the Peltons seek damages for injuries that fall squarely within this exclusion, including "harassment" and "humiliation" that arose in Elaine's work environment.  Under the unambiguous terms of this exclusion, there would be no coverage for Tenney even if his actions were within the conduct of M&T's business so as to make him an insured under M&T's policy.  Because the exclusion applies expressly to a spouse's claims, it precludes coverage for Dean Pelton's consortium claim is as well.

Hartford anticipates that Tenney may assert that he did not harass or humiliate Elaine but instead placed the surveillance camera under her desk as part of his supervision as her employer.  First, any such explanation merely would be a reinterpretation of the allegations in the complaint, and that explanation does not

consist of, and has not included, different *facts* that could trigger coverage under

Colonial Oil.  As the Court of Appeals made clear in Shafe,

> the applicable law . . . does not allow an insured to create coverage
> simply by "reinterpreting" the factual allegations made so as to come
> within the scope of the insurance contract. Rather, the rule requires
> that, if the complaint fails to allege facts that bring the claim within
> policy coverage, a duty to defend may nevertheless exist where the
> insured informs the insurer of additional <u>facts</u> related to the claim that
> would entitle him to a defense of the same under the policy.

288 Ga. App. at 318-19, 653 S.E.2d at 874.  Any assertion by Tenney that he did

not intend to humiliate or harass Elaine is simply a reinterpretation of the

allegations that cannot create coverage under the policy.  Second, even if Tenney

placed the surveillance camera pursuant to his supervisory role, his conduct would

be all the more related to Elaine's employment thereby triggering the Employment-

Related Practices Exclusion.  Either way, the exclusion precludes coverage for the

claims asserted by the Peltons.

**D.    No Coverage for "Personal and Advertising Injury"**

As discussed above, the policy covers "personal and advertising injury" that

results from enumerated "offenses" committed during the policy period.  For

purposes of this motion, Hartford assumes that the allegations fall within the

offense of "[d]iscrimination or humiliation that results in injury to the feelings or

reputation of a natural person." (Complaint, ¶ 21 & Exhibit E, at § G(17)(h)).

Even if that is the case, Tenney would not be insured because, as discussed above, the law deems that any humiliation claims are not part of a person's employment. Because Tenney is an insured for conduct pursuant to M&T's business only, any claims for "humiliation" would mean by definition that Tenney is not an insured under the policy issued to M&T. For this reason alone, the "humiliation" offense would create no coverage for Tenney. Moreover, three exclusions preclude a defense duty as a matter of law.

First, the policy excludes coverage for injury arising out of an offense committed by the insured with the expectation of inflicting "personal and advertising injury." (Complaint, ¶ 22 & Exhibit E, at § B(1)(a)(2)). As stated above with respect to the bodily injury exclusions, Tenney's conduct would be expected to inflict injury. Any claim against Tenney for "discrimination or humiliation" that would constitute "personal and advertising injury" would therefore be excluded.

Second, the policy excludes coverage for "personal and advertising injury" "arising out of discrimination or humiliation committed by or at the direction of any . . . partner or member of the Insured." (Complaint, ¶ 22 & Exhibit E, at § B(1)(p)(15)). Tenney was a partner of M&T, "the Insured." To the extent he was acting on behalf of the insured M&T's business, any such offense would not be

covered.  Because any "personal and advertising injury" resulting from the offense of "discrimination or humiliation" arose out of "discrimination or humiliation committed by or at the direction of [Tenney]," coverage is precluded by this exclusions as well.

Lastly, to the extent the Peltons allege "personal or advertising injury" arising from Elaine's employment by M&T, the policy excludes coverage for "employment related practices" under the identical exclusion that is discussed above with respect to the "bodily injury" provisions.  Discrimination, humiliation, or harassment of an employee is expressly excluded under the Policy.

### III.   CONCLUSION

Tenney seeks coverage for alleged acts of sexual harassment to an employee, which on the face of the complaint are not "accidental," are not in the conduct of the insured's business, and happened in the workplace to an employee. As Georgia law makes clear, the alleged conduct is not covered under Hartford's policy.  Hartford's Motion for Judgment on the Pleadings should be granted, and the Court should issue a declaration that Hartford does not have a duty to defend or

indemnify Tenney in connection with the claims asserted against them by the Peltons in the underlying lawsuit.[4]

Respectfully Submitted,

**FREEMAN MATHIS & GARY, LLP**

/s/ Philip W. Savrin_____
Philip W. Savrin
Georgia Bar No. 627836

Attorney for Plaintiff Hartford Fire Insurance Company

100 Galleria Parkway
Suite 1600
Atlanta, Georgia 30339-5948
T: 770-818-0000
F: 770-937-9960
E: psavrin@fmglaw.com
pws1469

---

[4] Because Hartford is moving for judgment on the pleadings, it has tailored its arguments to the facts alleged in the underlying case and the claims asserted in this coverage action, including Tenney's counterclaims.  Hartford is aware that Tenney has moved for summary judgment based in part on a request he has made to be indemnified by the law firms.  Hartford will address the absence of coverage for any indemnity assertions including the improper request by Tenney for defense when he is acting as a claimant against the law firms. Hartford does note, however, that coverage for any derivative claims would be absent if no coverage exists for the reasons set forth in this brief.

<u>**CERTIFICATE OF FONT SIZE**</u>

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing has been prepared in compliance with Local Rule 5.1(B) in Times New Roman 14 point type face.

**FREEMAN MATHIS & GARY, LLP**


\s\ Philip W. Savrin
Philip W. Savrin
Georgia Bar No. 627836
psavrin@fmglaw.com


Attorneys for Hartford Fire Insurance Company

100 Galleria Parkway
Suite 1600
Atlanta, Georgia  30339-5948
T – 770.818.0000
F – 770.937.9960

## <u>CERTIFICATE OF SERVICE</u>

I have this day served the foregoing **PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS AS TO JAMES F. TENNEY AND BRIEF IN SUPPORT** to the Clerk of Court using the CM/ECF system which will automatically send electronic mail notification of such filing to counsel of record who are CM/ECF participants and mailed by United States Postal Service, first class, postage prepaid, a paper copy of the same document to counsel of record who are non-CM/ECF participants as follows:

Kevin J. Bahr, Esq.
MASON BAHR LLP
Two Ravinia Drive, Suite 610
Atlanta, GA  30346

Richard L. Robbins, Esq.
ROBBINS FREED LLC
999 Peachtree Street, N.E.,
Suite 1120
Atlanta, GA  30309

Anthony L. Cochran, Esq.
CHILIVIS COCHRAN LARKINS
& BEVER, LLP
3127 Maple Drive, N.E.
Atlanta, GA 30305

Allen L. Broughton, Esq.
ALLEN L. BROUGHTON, P.C.
305 West Wieuca Road, N.E.
Atlanta, GA  30342

This 6th day of December, 2010.

*s/ Philip W. Savrin*
Philip W. Savrin
Georgia Bar No. 627836
psavrin@fmglaw.com

FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway
Suite 1600
Atlanta, Georgia  30339-5948
(770) 818-0000 (telephone)
(770) 937-9960 (facsimile)