IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

HARTFORD FIRE INSURANCE )
COMPANY, )
)
    **Plaintiff,** )
)    **CIVIL ACTION FILE NO.:**
**v.** )    **1:10-CV-3063-RLV**
)
)
MERRITT & TENNEY, LLP; )
MERRITT WATSON, LLP; )
JAMES F. TENNEY; ELAINE )
PELTON and DEAN PELTON, )
)
    **Defendants.** )

**PLAINTIFF'S BRIEF IN OPPOSITION TO JAMES F. TENNEY'S
MOTION FOR SUMMARY JUDGMENT**

Plaintiff Hartford Fire Insurance Company ("Hartford") files this brief in opposition to defendant James F. Tenney's motion for summary judgment. For the reasons addressed in this brief, Tenney's motion should be denied.[1]

## I.    Introduction and Procedural History

Elaine Pelton alleges that she was employed as a legal secretary for the law firm Merritt & Tenney, LLP ("M&T") when she discovered that Tenney -- who was a partner of the firm – had secretly placed a camera under her desk aimed at

---

[1]    Hartford has moved for judgment on the pleadings on these same issues.

her genitalia.  She and her husband filed a lawsuit in the State Court of Cobb County seeking damages for injuries sustained as a result of Tenney's conduct, naming Tenney and M&T as defendants along with Merritt Watson, LLP, the putative successor law firm to M&T ("MW").

Tenney sought coverage for the Peltons' claims under a commercial general liability insurance policy Hartford issued to M&T as the named insured which, in certain circumstances, provides insurance for M&T's partners.  Tenney also claims that he is entitled to indemnity by M&T or MW and seeks coverage from Hartford for this additional reason.  Hartford responded that the claims did not fall within the insuring agreement and several exclusions would apply in any event.  Hartford also informed Tenney that it did not have an obligation to defend him as a putative indemnity claimant.

In his motion, Tenney admits he placed the camera under Elaine's desk, stating it was an "ill-considered decision" intended "to monitor the conversations and activity of Ms. Pelton for purposes of determining her time spent performing work at her desk."  (Tenney Brief, p. 3; Tenney Aff. ¶ 8).  Tenney quotes (but does not argue) the "bodily injury" definition of the policy, (Tenney Brief, p. 11). Instead, he argues that the "personal injury" offense of "invasion of the right of private occupancy that the person occupies, committed by or on behalf of its

owner, landlord or lessor," applies.  (Id., pp. 18-21).  In addition, Tenney contends that the law firm owes him indemnity, which in turn triggers a coverage obligation by Hartford.  (Id., at pp. 21-23).[2]

Tenney's coverage claim is based on the personal injury offense of "invasion of the right of private occupancy."  As explained below, Pelton lacks a necessary component of this offense because she did not have a possessory interest in her secretarial desk.  Even if she had such an interest, several exclusions would apply.  Moreover, the policy excludes coverage for bodily or personal injuries to an employee of M&T or caused by employment-related practices.  Fundamentally, the policy does not apply to the claims asserted against Tenney.

The absence of substantive coverage for the Peltons' claims means that Tenney's indemnity claim is not covered.  Moreover, as a claimant seeking

---

[2] Even if Tenney had argued the "bodily injury" provisions, coverage would be absent due to the absence of physical harm, the absence of an "occurrence," and the applicable exclusions, as set forth in Hartford's Motion for Judgment on the Pleadings as to James F. Tunney. See Nationwide Mut. Fire Ins. Co. v. Somers, 264 Ga. App. 421, 427, 591 S.E.2d 430, 435 (2003) ("bodily injury" does not cover "claims for emotional distress or injured feelings"); SCI Liquidating Corp. v. Harford Fire Ins. Co., 181 F.3d 1210, 1216 (11th Cir. 1999) (construing CGL policy, holding that allegations of sexual harassment do not satisfy definition of "occurrence"); O'Dell v. St. Paul Fire & Marine Ins. Co., 223 Ga. App. 578, 580, 478 S.E.2d 418 (1996) (sexual harassment not an "accident").  Hartford also incorporates its discussion of the intentional injury and employment-related practices exclusions that would apply to any bodily injury coverage in any event.

indemnity <u>from</u> the law firm, Tenney has no claim for coverage under the policy. Tenney's indemnity claim also is not covered for several reasons discussed below.

## II.   <u>Statement of Facts</u>

### A.   <u>The Liability Complaint</u>

Elaine Pelton alleges she was employed as a legal secretary by M&T on May 10, 2010 when she discovered that Tenney, a partner of M&T, had placed a camera under her desk aimed at her genitalia.  The Peltons claim the placement of the camera was illegal and an "unlawful touching" that has caused her mental stress and anguish.  The Peltons further allege that Tenney was arrested for the crime of unlawful surveillance as a result of this conduct. (Complaint, ¶ 24).  Dean Pelton seeks to recover for loss of support, services and companionship as a result of Elaine Pelton's alleged injuries. (Complaint, ¶¶ 12, 23 & Exhibit B, at ¶¶ 47-48).  The Peltons seek compensatory and punitive damages against all defendants as well as legal expenses. (Complaint, ¶ 13 & Exhibit B, at ¶¶ 61-62).

### B.   <u>The Policy</u>

Hartford issued policy number 20 SBA TE1805 to M&T as the named insured for the period July 1, 2009 to July 1, 2010.  (Complaint, ¶ 16 & Exhibit E). The policy includes M&T's partners as insureds "but only with respect to the conduct of [M&T's] business." (Complaint, ¶ 17 & Exhibit E, at § C(1)(b)).  Under

the policy, "Personal and advertising injury," in turn, must result from "offenses" committed during the policy period. The "offense" urged by Tenney is "wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that the person occupies, committed by or on behalf of its owner, landlord or lessor." (Complaint, ¶ 21 & Exhibit E, at § G(17)(c)). Coverage is limited by exclusions; relevant here are exclusions for intended acts and for employment-related injuries.

In addition to these substantive coverage provisions, Tenney contends that M&T must indemnify him under Georgia law, which he maintains triggers coverage obligations under two policy provisions. First, under the "COVERAGE EXTENSION – SUPPLEMENTARY PAYMENTS" section, Hartford agreed to defend an indemnitee of the insured if conditions are met, including all of the following:

(1)   The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

(2)   This insurance applies to such liability assumed by the insured;

(3)   The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insurance contract";

(4)   The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist

5

>between the interests of the insured and the interest of the
>indemnitee;
>
>**(5)**   The indemnitee and the insured ask us to conduct and control
>the defense of that indemnitee against such "suit" and agree that
>we can assign the same counsel to defend the insured and the
>indemnitee;

(Complaint, ¶ 21 & Exhibit E, at § A(3)(b)).  An additional condition requires that

the indemnitee agree to comply with the same conditions precedent to coverage as

the insured.

Second, Tenney cites an exception to an exclusion from coverage for

contractual liability for an "insured contract" as a basis for providing an obligation

on behalf of Hartford.  Tenney's indemnity arguments are untenable for a number

of reasons:  (1) Tenney has not asserted an indemnity cross-claim, and in any event

as a <u>claimant</u> on any such action, has no rights on the policy; (2) the "insured

contract" provision does not create coverage absent a grant of coverage being

triggered; and (3) the "indemnitee" conditions in the policy are not met.

## III.   ARGUMENT AND CITATION OF AUTHORITY

Because the question of coverage depends on a defense duty being triggered

at all, Hartford first will address the relevant legal standard and then demonstrate

that the policy affords no coverage to Tenney.

A.    **The Standard for Assessing Coverage**

In assessing whether the insurer has a duty to defend, "the [insured] claiming a benefit has the burden of proving a claim falls within the coverage of the policy." Georgia Farm Bur. Mut. Ins. Co. v. Hall County, 262 Ga. App. 810, 812, 586 S.E.2d 715, 717 (2003).  The existence of a duty to defend turns on the language of the insurance contract and the allegations of the liability complaint.   City of Atlanta v. St. Paul Fire & Marine Ins. Co., 231 Ga. App. 206, 207, 498 S.E.2d 782, 784 (1998).   When the complaint does not assert claims within the terms of coverage, therefore, the insurer is not required to defend the lawsuit.  Colonial Oil Indus. v. Underwriters, 268 Ga. 561, 562, 491 S.E.2d 337, 339 (1997).

If "the insured notifies the insurer of factual contentions that would place the claim within policy coverage"; then the insurer should go beyond the allegations of the complaint and investigate so that its decision is based on the "true facts."  Id. To trigger this additional responsibility, the insured must come forward with facts and cannot simply "reinterpret" the allegations to create coverage.   Shafe v. American States Ins. Co., 288 Ga. App. 315, 318-19, 653 S.E.2d 870, 874 (2007).

Because the duty to defend is broader than the duty to indemnify, an insurer is entitled to a declaration of no coverage if the complaint's allegations do not trigger a contractual defense obligation.  See York Ins. Co. v. Houston Wellness

Ctr., 261 Ga. App. 854, 855, 583 S.E.2d 903 (2003) (no duty to defend or indemnify where allegations fall within exclusion); Southern Ins. Co. v. Dowse, 278 Ga. 674, 676, 605 S.E.2d 27, 29 (2004) ("if the underlying claim is outside the policy's scope of coverage, then SGIC's refusal to indemnify or defend was justified"). Lastly, whether policy provisions give rise to a defense duty is a legal question for the court to resolve. See ALEA London Ltd. v. Woodcock, 286 Ga. App. 572, 576-77, 649 S.E.2d 740, 744-46 (2007) (finding trial court erroneously submitted policy interpretation to the jury).

With these legal standards in mind, Hartford next discusses the Peltons' claims against Tenney to show that they lie outside the terms of coverage.

## B.   Tenney Is Not An Insured

The fact that Tenney was a partner of named insured M&T does not automatically make him an insured. Instead, Tenney is an insured only to the extent he was acting as a partner in the conduct of the insured law firm's business. (Complaint, ¶ 17 & Exhibit E, at § C(1)(b)).

Under Georgia law, claims of sexual harassment or invasion of privacy are personal in nature and unrelated to the employee's duties even when they occur in the workplace. See Travis Pruitt & Assocs., P.C. v. Hooper, 277 Ga. App. 1, 2-3, 625 S.E.2d 445 (2005) (sexual harassment claim did not arise out of employment

or conduct of employer's business).  The allegations that Tenney installed a camera underneath Pelton's desk and adjusted it several times to make sure it was pointed at her genitalia is purely personal and outside the scope of Tenney's duties as a partner of M&T.  Because these allegations do not relate to the conduct of M&T's business, as a matter of law Tenney does not meet the definition of an insured.

Tenney's position that his conduct was related to his supervision of Pelton does not change the analysis.  Tenney's subjective reason for placing the camera is not a "fact" contemplated by the case law, but simply a "reinterpretation" of the facts alleged by the Peltons.  As the Court of Appeals made clear in <u>Shafe</u>,

> the applicable law . . . does not allow an insured to create coverage simply by "reinterpreting" the factual allegations made so as to come within the scope of the insurance contract. Rather, the rule requires that, if the complaint fails to allege facts that bring the claim within policy coverage, a duty to defend may nevertheless exist where the insured informs the insurer of additional <u>facts</u> related to the claim that would entitle him to a defense of the same under the policy.

288 Ga. App. at 318-19, 653 S.E.2d at 874.  Despite Tenney's position, Georgia law provides that the allegations in the Pelton complaint fall <u>outside</u> the scope of employment and the conduct of the insured law firm's business.  Even if his suggested "spin" mattered, the exclusion discussed below for employment claims would be triggered.  (Complaint, ¶ 22 & Exhibit E, at § B(1)(r)).

In sum, neither the allegations of the Pelton complaint nor Tenney's position as to his motives constitute covered conduct.  Tenney is not an insured.

### C.   No Coverage for "Personal and Advertising Injury"

As discussed above, the policy covers "personal and advertising injury" that results from enumerated "offenses" committed during the policy period.  In his motion, Tenney contends the following offense applies:

> wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that the person occupies, committed by or on behalf of its owner, landlord or lessor.

(Complaint, ¶ 22 & Exh. E, § G(17)(c)).[3]   Under the plain meaning of this provision, coverage is afforded if the claimant (1) had a "private occupancy" right that (2) was infringed by an "owner, landlord or lessor" of the property.

In Auto-Owners Ins. Co. v. Robinson, 2006 WL 2583356 (M.D. Ga. 2006), Judge Land concluded that an insured's refusal to sell a house for racial reasons was not covered by this identical provision.  In reasoning to that conclusion, he found the inquiry is "not whether a party has physically assumed control of the property, but whether he has obtained a legally enforceable right to do so."  Id., *4 (quoting Hobbs Realty & Constr. Co. v. Scottsdale Ins. Co., 593 S.E.2d 103, 107-

---

[3] Tenney does not ask this Court to find coverage under an offense for "discrimination or humiliation that results in injury to the feelings or reputation of a natural person."  This decision may be tactical:  the policy excludes such claims if "committed by or at the direction of any . . . partner or member of the Insured."

08 (N.C. App. 2004)) (emphasis in original).   Because the plaintiffs were prospective buyers with only a desire to occupy the residence, they did not allege a right of "private occupancy."   Similarly, in State Farm Fire & Cas. Co. v. Burkhardt, 96 F. Supp. 2d 1343, 1351 (M.D. Ala. 2000), the court had no difficulty finding that claims of sexual harassment in the workplace do not implicate this identical offense.   There, the court reasoned that coverage for invading the right to occupy a "room" would not apply outside the "tenancy situation."   Id.

In seeking coverage in this case, Tenney relies entirely on Somers, where the plaintiff sued for desecration to a grave site.   But Somers is not apposite to the Peltons' allegations.   The Somers court stated the plaintiff's "allegation implies a wrongful entry into or an invasion of the right of private occupancy of the grave site."   264 Ga. App. at 427, 591 S.E.2d at 435.   A grave site, however, is a piece of land that can be purchased and owned.   Nothing in Somers warrants an extension of its rationale to the case at bar.   Here, Elaine does not (and cannot) claim a legally enforceable right to occupy her secretarial desk.   As the Kansas Court of Appeals has aptly stated,

> To construe private occupancy to mean a right of occupancy of something other than property, such as occupancy of a position of employment, as urged by TTA, would be an unauthorized perversion of the language.

Topeka Tent & Awning Co. v. The Glen Falls Ins. Co., 13 Kan. App.2d 553, 556-57, 774 P.2d 984, 987 (1989) (emphasis added).

Even if the offense were triggered, however Tenney would not be insured because, as discussed above, the law deems that harassment claims are not part of a person's employment.  Because Tenney is an insured for conduct pursuant to M&T's business only, any claim for personal injury would not be covered.  Moreover, two exclusions preclude a defense duty as a matter of law.

First, the policy excludes coverage for injury arising out of an offense committed by the insured with the expectation of inflicting "personal and advertising injury."  (Complaint, ¶ 22 & Exhibit E, at § B(1)(a)(2)).  Tenney's conduct – intentionally placing a camera under his employee's desk and aiming it at her genitalia -- would be expected to inflict injury.  Any claim against Tenney that would constitute "personal and advertising injury" would therefore be excluded.

To the extent the Peltons allege "personal or advertising injury" arising from Elaine's employment by M&T, the policy excludes coverage for "employment related practices" that bars coverage for "bodily injury" or "personal and advertising injury" to a person arising out of "Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment,

discipline, defamation, harassment, humiliation or discrimination directed at the person." (Complaint, ¶ 22 & Exhibit E, at § B(1)(r)(1)(c)).  This exclusion applies explicitly to the "spouse" of anyone who sustained the excluded injury. (Complaint, ¶ 22 & Exhibit E, at § B(1)(r)(2)).

The Peltons seek damages for injuries that fall squarely within this exclusion for claims arising in the work environment.  Under the unambiguous terms of this exclusion, there would be no coverage for Tenney even if his actions were within the conduct of M&T's business so as to make him an insured under M&T's policy. Because the exclusion applies expressly to a spouse's claims, it precludes coverage for Dean Pelton's consortium claim is as well.

Tenney's contention that he placed the camera to monitor Elaine's "time spent performing work at her desk," (Tenney Brief, p. 3; Tenney Aff. ¶ 8), does not change this analysis.   As stated above, an insured cannot "reinterpret" the allegations to create a defense duty.  Shafe, supra.  Moreover, if anything, Tenney underscores that his conduct was related to Elaine's employment, thereby triggering the exclusion.  Either way, coverage is excluded for the Peltons' claims.

### D.     Tenney's Indemnity Argument Does Not Create Coverage

Tenney has not asserted an indemnity claim in the underlying lawsuit but has simply asked M&T to indemnify him for the Peltons' claims, purportedly

based on his interpretation of Georgia law.   Assuming Tenney has asserted an indemnity claim against M&T,[4] Tenney would have no claim for coverage because:  (1) Tenney has no rights on the policy as a claimant against the law firm; (2) the "insured contract" exception to the contractual liability exclusion cannot apply; and (3) the conditions precedent are not met for Tenney to be entitled to a defense as an "indemnitee" under the provisions of the policy.

### 1.      Tenney has no rights on the policy as a claimant

In seeking indemnity from the law firm, Tenney is in the position of a claimant who "are not regarded as third-party beneficiaries of insurance policies." Payne v. Twiggs County Sch. Dist., 269 Ga. 361, 496 S.E.2d 690 (1998).  If a claimant obtains a judgment against the insured, he then can proceed to collect the policy proceeds as an asset of the insured in his status as a judgment creditor.  See Smith v. GEICO, 179 Ga. App. 654, 655, 347 S.E.2d 245, 246 (1986).  Even then, the right as a judgment creditor is limited to the terms of coverage under the

---

[4] The partnership agreement attached to Tenney's affidavit has no indemnity provision and Georgia courts have held that a "partner had no right to seek contribution from his co-partners, reasoning that an actively negligent party cannot seek contribution from those to whom his negligence is imputed." St. Paul Fire & Mar. Ins. Co. v. MAG Mut. Ins. Co., 209 Ga. App. 184, 185, 433 S.E.2d 112, 113 (1993).  Indeed, "[a] partnership, liable to a third person for injuries, has a right of indemnity against the partner whose negligence caused the injuries." Flynn v. Reaves, 135 Ga. App. 651, 654 n.5, 218 S.E.2d 661, 663 n.5 (1975).  If anything, M&T may have a claim against Tenney under the facts alleged.

policy.  <u>Richards v. State Farm Mut. Auto. Ins. Co.</u>, 252 Ga. App. 45, 46-47, 555 S.E.2d 506, 508 (2001).  Even if Tenney has an indemnity claim against M&T, therefore, he has no coverage claim against Hartford in that capacity.

### 2.   Tenney's indemnity claim is not covered

Even if a claimant could sue for coverage, the Peltons' claims against Tenney lie outside the substantive provisions of coverage.  Without substantive coverage for the liability claims, there could be no coverage for a derivative indemnity claim.  Moreover, the "insured contract" provision to which Tenney refers is an exception to an exclusion.  It is not an additional, substantive grant of coverage.  The "insured contract" exception could apply <u>only if</u> (a) the allegations fall within the insuring agreement, and (b) the allegations would otherwise be subject to the "contractual liability" exclusion.  As the policy makes clear,

> This insurance does not apply to:
>
> …
>
> b.    Contractual Liability
>
>        (1) "Bodily injury" or "property damage"; or
>        (2) "Personal and advertising injury"
>
>        For which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.
>
>        This exclusion does not apply to liability for damages because of:

…

> (b) "Bodily injury" or "property damage" assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.

(Complaint, ¶ 21 & Exhibit E, at § B(1)(b)).  An "insured contract," in turn, is defined in relevant part as

> That part of any other contract or agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for "bodily" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

In Scottsdale Ins. Co. v. Great Am. Assur. Co., 271 Ga. App. 695, 610 S.E.2d 558 (2005), the Court of Appeals explained that the "insured contract" exception cannot be reached unless the claim is both within a grant of coverage and subject to the contractual liability exclusion:

> "[B]efore addressing whether the terms of some exclusion might be applicable, the initial consideration is whether the policy covered [the claim]."  This principle applies with equal or greater force to an exception to an exclusion.

Id at 696, 610 S.E.2d at 560 (quoting Allstate Ins. Co. v. Grayes, 219 Ga. App. 419, 420, 454 S.E.2d 616 (1995).  In that case, Scottsdale settled a medical malpractice claim and then obtained an indemnity judgment against its insured's

16

tenant (Moresi & Blum, P.C.) based on the terms of a lease agreement.  Scottsdale

then sued the tenant's carrier, Great American Assurance Company.   Although

Great American's policy covered "bodily injury" claims, the court found

Scottsdale's indemnity judgment was <u>outside</u> Great American's grant of coverage:

> Although the underlying event giving rise to Scottsdale's claim
> involved a personal injury, Great American did not insure against
> Moresi & Blum's failure to abide by the terms of its lease agreement.
> …  Here, Moresi & Blum's policy did not provide coverage for the
> "injury" alleged by Scottsdale, i.e., the failure of Moresi & Blum to
> fulfill its contractual obligation to indemnify its lessor.

<u>Id</u>. at 696, 610 S.E.2d at 560.  Whether the lease agreement was an "insured

contract" which was an exception to an exclusion for contractual liability was not

relevant:  "Since there is no coverage in the first instance, the exception to one of

the policy's exclusions has no legal significance."  <u>Id.</u>

Pursuant to <u>Scottsdale</u>, any claim by Tenney for indemnity against the law

firm would not be within the grant of coverage because Tenney did not sustain

"bodily injury," "property damage" or "personal and advertising injury" even if his

claim had derived from a covered claim (which it did not for reasons stated above).

Without a grant of coverage in the first place, the contractual liability exclusion –

which is not even being argued by Hartford -- would not be reached.  And without

the contractual liability exclusion applying, the exception to that exclusion for

"insured contract" never enters into the analysis.  Even then, Tenney concedes that

the partnership agreement lacks an indemnity provision, and that his claim (if any) arises from common law.  Because the indemnity claim was not "assumed in a contract or agreement," there would be no "insured contract" in any event.

Lastly, the "insured contract" exception applies to "bodily injury" and "property damage" claims only; it does not apply to "personal and advertising injury."  Consequently, there would be no coverage afforded for the "personal and advertising injury" urged by Tenney under any scenario.

### 3.      Tenney is not entitled to a defense as an "indemnitee"

Tenney relies as well on the "indemnitee" provisions under which Hartford agrees to defend an indemnitee of an insured <u>if</u> Hartford is defending the insured <u>and</u> specified conditions are met. (Complaint, ¶ 21 & Exhibit E, at § A(3)(b)).  But whereas <u>all</u> of the specified conditions must be met to trigger the "indemnitee" provisions, here <u>none</u> are met.  Condition (1) is not satisfied because there is no liability assumed by M&T in an "insured contract" for the reasons addressed above.  Condition (2) is not satisfied because the law firms have not assumed his liability.  Condition (3) is not satisfied because Tenney has not shown that he is indemnified by the law firm for the Peltons' claims.  Condition (4) is not satisfied because even assuming there were an "occurrence" (which there is not for the reasons discussed at length in Hartford's briefs), a conflict of interest appears to

exist between the interests of the insured law firm and the putative indemnitee.  As evidence of the conflict, Tenney himself states that "Tenney's law partners took the position that Tenney was no longer a parter in the firm (a position that Tenney denies) and they summarily forced him to vacate his office and relocate his practices." (Tenney Brief, p. 4; Tenney Aff., ¶ 9).  Indeed, the law firms might have a claim against Tenney if his active negligence is imputed under the <u>Flynn</u> case discussed above.  And Condition (5) is not satisfied because in light of the conflict, the same counsel could not defend the law firms and Tenney.

For all these reasons, no defense is owed Tenney under the "indemnitee" provision of the policy.

### III.   <u>CONCLUSION</u>

In sum, Tenney is not an insured under the policy because his conduct was outside the law firm's business as defined by the case law.  To the extent his conduct was within the business of the law firm, his contention that the claim is covered as "an invasion of the right of private occupancy" is belied by the clear and unambiguous language of the policy and the relevant case law construing that provision.  In addition, several exclusions would apply.  Lastly, any claim for indemnity would not extend coverage to Tenney for the multiple reasons asserted in this brief.

WHEREFORE, Tenney's motion for summary judgment should be denied.

Respectfully Submitted,

**FREEMAN MATHIS & GARY, LLP**


/s/ Philip W. Savrin
Philip W. Savrin
Georgia Bar No. 627836

Attorney for Plaintiff Hartford Fire Insurance
Company

100 Galleria Parkway
Suite 1600
Atlanta, Georgia 30339-5948
T: 770-818-0000
F: 770-937-9960
E: psavrin@fmglaw.com
L:\DOCS\5419\43835\VJB3775.DOC

## <u>CERTIFICATE OF FONT SIZE</u>

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing has been prepared in compliance with Local Rule 5.1(B) in Times New Roman 14 point type face.

**FREEMAN MATHIS & GARY, LLP**

\s\ Philip W. Savrin_____
Philip W. Savrin
Georgia Bar No. 627836
psavrin@fmglaw.com

Attorneys for Hartford Fire Insurance Company

100 Galleria Parkway
Suite 1600
Atlanta, Georgia  30339-5948
T – 770.818.0000
F – 770.937.9960

## <u>CERTIFICATE OF SERVICE</u>

I have this day served the foregoing **PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS AS TO JAMES F. TENNEY AND BRIEF IN SUPPORT** to the Clerk of Court using the CM/ECF system which will automatically send electronic mail notification of such filing to counsel of record who are CM/ECF participants and mailed by United States Postal Service, first class, postage prepaid, a paper copy of the same document to counsel of record who are non-CM/ECF participants as follows:

Kevin J. Bahr, Esq.
MASON BAHR LLP
Two Ravinia Drive, Suite 610
Atlanta, GA  30346

Richard L. Robbins, Esq.
ROBBINS FREED LLC
999 Peachtree Street, N.E.,
Suite 1120
Atlanta, GA  30309

Anthony L. Cochran, Esq.
CHILIVIS COCHRAN LARKINS
& BEVER, LLP
3127 Maple Drive, N.E.
Atlanta, GA 30305

Allen L. Broughton, Esq.
ALLEN L. BROUGHTON, P.C.
305 West Wieuca Road, N.E.
Atlanta, GA  30342

This 13th day of December, 2010.

s/ Philip W. Savrin
Philip W. Savrin
Georgia Bar No. 627836
psavrin@fmglaw.com

FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway
Suite 1600
Atlanta, Georgia  30339-5948
(770) 818-0000 (telephone)
(770) 937-9960 (facsimile)