## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **HARTFORD FIRE INSURANCE COMPANY,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) ) | **CIVIL ACTION FILE NO.:** **1:10-CV-3063-RLV** |
| | ) ) | |
| **MERRITT & TENNEY, LLP; MERRITT WATSON, LLP; JAMES F. TENNEY; ELAINE PELTON and DEAN PELTON,** | ) ) ) ) ) | |
| **Defendants.** | ) | |

### PLAINTIFF'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS AS TO MERRITT & TENNEY, LLP AND MERRITT WATSON, LLP

Hartford Fire Insurance Company ("Hartford") files this reply brief in support of its motion for judgment on the pleadings as to the absence of coverage for claims asserted against Defendants Merritt & Tenney, LLP (M&T) and Merritt Watson, LLP (MW) by Defendants Elaine and Dean Pelton.

### PROCEDURAL HISTORY

In its opening brief, Hartford showed that (1) Merritt Watson is not an insured under the policy; (2) the claims do not fall within the grants of coverage for bodily injury or personal injury; and (3) the claims fall within a number of

exclusions in the policy.  In their response brief, the law firms contend that (a) Merritt Watson is the same entity as Merritt & Tenney (the named insured under the policy) and (b) the liability claims are covered by the policy.  None of the law firms' arguments lead to coverage under the policy.

## ARGUMENT AND CITATION OF AUTHORITY

"Insurance in Georgia is a matter of contract and the parties are bound by its plain and unambiguous terms."  Michna v. Blue Cross & Blue Shield of Georgia, Inc., 288 Ga. App. 112, 113, 653 S.E.2d 377, 379 (2007).  "[T]he court's job is simply to apply the terms of the contract as written, regardless of whether doing so benefits the carrier or the insured.  Reed v. Auto-Owners Ins. Co., 284 Ga. 286, 287, 667 S.E.2d 90, 92 (2008).  Policy interpretation is a legal issue well-suited for adjudication by motion.  Michna, 288 Ga. App. at 114, 653 S.E.2d at 379.

### A.      Merritt Watson is Not an Insured

The policy was issued to Merritt & Tenney as the named insured whereas the Peltons have sued both Merritt & Tenney and Merritt Watson.  The law firms maintain that Merritt Watson was simply a name change, that Hartford was provided documentation to that effect, and that Hartford erroneously refuses to credit Merritt Watson's assertions as to its status.  But a copy of Merritt Watson's public filing (which was provided by MW to Hartford) shows MW was created on

July 1, 2010 – after the events in this case took place and upon the expiration of the Hartford policy period.  (Exhibit attached).  In addition, in an affidavit submitted in this case, one of M&T's partners (James F. Tenney) attests as follows:

> After the issue with the camera arose, my law partners took the position that I was no longer a partner in the firm.  However, the terms of the partnership agreement do not afford them this right.  Nonetheless, my partners forced me to vacate my office and relocate my practice.

([Doc. 17], Attachment 2, Aff., ¶ 9).

The policy, meanwhile, has provisions that determine whether entities that named insured Merritt & Tenney "acquires or forms" are considered "insureds" under its terms.  Based on Tenney's testimony, Merritt Watson was not formed by Merritt & Tenney but instead by two of the partners of Merritt & Tenney.  On that basis alone, Merritt Watson is not an "insured."  Moreover, the policy covers "bodily injury" that occurs during the policy period of July 1, 2009 to July 1, 2010 or "personal and advertising injury" offenses that were committed during that period.  MW was not created until July 1, 2010, which was 60 days after the events of May 10, 2010 and coincides with the end of the Hartford policy.  Because Merritt Watson is a different entity that did not exist when the events in this case took place, it is not an "insured" under the terms of the policy.

In sum, any coverage would be for potential liability by Merritt & Tenney but not the newly-formed Merritt Watson. Accordingly, this Court should declare that Hartford owes no defense obligation to Merritt Watson apart from the substantive provisions of the policy.

**B.     No Coverage for Bodily Injury**

**1.     No Physical Impact is Shown**

"Bodily injury" as defined by the policy requires a <u>physical</u> impact. See generally Presidential Hotel v. Canal Ins. Co., 188 Ga. App. 609, 611, 373 S.E.2d 671 (1988). The law firms admit this principle but contend the standard is satisfied by the Peltons' allegation that Tenney's actions constituted an "unlawful touching." In their complaint, the Peltons allege that Tenney made "an illegal attempt to commit a physical injury upon Defendant [sic] Elaine Pelton." (Complaint, Exh. B, ¶ 30). The Peltons reach this conclusion by positing that placing the camera under the desk "was an unlawful touching of Plaintiff Elaine Pelton's person." (Id., ¶ 32). Based on that premise, the Peltons then contend that there was a "[p]hysical impact on Plaintiff Elaine Pelton." (Id., ¶ 34).

An insurer's duty to defend, however, is based on the **facts** alleged in the complaint, not interpretations of those facts. Shafe v. American States Ins. Co., 288 Ga. App. 315, 318-19, 653 S.E.2d 870, 874 (2007). In that respect, Elaine

Pelton alleges she discovered the camera when she "heard an object fall on her Dictaphone foot pad." (Complaint, Exh. B., ¶ 7). Her complaint then describes in detail how she took possession of the camera and had it examined by her husband. Considering all of the alleged facts to be true, there was no physical impact upon her body notwithstanding the conclusion the Peltons draw from those facts in their complaint. Tellingly, there is no damages claim for physical injuries; instead, Elaine seeks damages for emotional distress. (Id., ¶¶ 37, 44, 46, 59). Based on the facts alleged in the complaint, therefore, there is no claim for damages because of bodily injury as required by the policy.[1]

### 2.    No "Occurrence" is Alleged

Even assuming there were allegations of "bodily injury" (which there are not), any bodily injury must be caused by an "occurrence," defined as an accident, to be eligible for coverage under the policy. Georgia law defines "occurrence" in this context as "an unexpected happening rather than one occurring through intention or design." Custom Planning & Dev. Co. v. American Nat'l Fire Ins. Co., 270 Ga. App. 8, 9-10, 606 S.E.2d 39 (2004). "In other words, where an act is

---

[1]    The law firms do not address Dean Pelton's loss of consortium claim which is clearly beyond the scope of bodily injury coverage. Bartlett v. American Alliance Ins. Co., 206 Ga. App. 252, 827, 424 S.E.2d 825 (1993) ("[a] loss of consortium claim is based not upon injury to the body of the claimant but instead solely upon the claimant's property right arising out of the marriage relationship to the love, companionship, and conjugal affection of the spouse.").

intentional, it does not constitute an 'accident' under the terms of … insurance policies." Forster v. State Farm Fire & Cas. Co., 2010 WL 4751714, *2 (Ga. App. Nov. 24, 2010).

Importantly, under Georgia law, the focus is on whether the act was intentional, not whether the injury was intentional.  In Rucker v. Columbia Nat'l Ins. Co., 2010 WL 4869787 (Ga. App. Dec. 1, 2010), for example, the court found no "occurrence" where the employer intentionally failed to conduct a background check on an employee who then kidnapped and murdered a customer.  Even though the employer did not intend the resulting injury, it did act intentionally:

> Because Taylor intended to forego conducting a background check on Phillips, the omission was an event that took place *with* Taylor's foresight, expectation or design.  The event upon which Rucker's claim was based was therefore was not a covered occurrence.  The bodily injury was not caused by an occurrence (accident) and was not within the risk insured against.  Accordingly, the policy did not provide coverage for the claim asserted and the trial court did not err in determining that Columbia had no duty to defend or indemnify Taylor.

2010 WL 4869787 at *4 (emphasis in original).

The law firms contend that the "occurrence" definition is met because the Peltons' injuries were brought about not by Tenney's intended act in placing the camera, but by Elaine's "unintended discovery of the camera." (Response Brief, p. 15).   This argument is not supported by Georgia law because the act that set the

6

injury in motion was intended.  Further, the law firms seek to distinguish O'Dell v.

St. Paul Fire & Mar. Ins. Co., 223 Ga. App. 578, 579-580, 478 S.E.2d 418 (1996),

which found the "occurrence" definition is not met in negligent retention claims

where (as here) the underlying conduct was intentional, by claiming that the

plaintiff in that case had not sustained "bodily injuries."  (Response Brief, p. 14).

Even if Elaine had alleged "bodily injuries" (which Hartford denies), the law firms

overlook the following very clear reasoning from O'Dell:

> the complaint does not allege that Gilleland suffered bodily injuries,
> and even assuming she *did* suffer bodily injuries, she did not allege
> that those injuries were caused by an accident and thus were brought
> about by an "event."

223 Ga. App. at 580, 478 S.E.2d at 420 (emphasis in original).  Because the O'Dell

court would have found no coverage for the employer even if Gilleland had

sustained bodily injuries, the law firms cannot meet their burden to show that the

"occurrence" definition is met.  See Georgia Farm Bur. Mut. Ins. Co. v. Hall

County, 262 Ga. App. 810, 812, 586 S.E.2d 715, 717 (2003) ("the [insured] . . . has

the burden of proving a claim falls within the coverage of the policy.")

### 3.    Exclusions Bar Coverage For "Bodily Injury"

Even if the claims constituted "bodily" injury" caused by an "occurrence,"

the claims would fall with the Employment-Related Practices Exclusion that bars

coverage for claims arising out of "Employment-related practices, policies, acts or

omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at the person." (Complaint, ¶ 22 & Exhibit E, at § B(1)(r)(1)(c)).  This exclusion applies explicitly to the "spouse" of anyone who sustained the excluded injury. (Id. at § B(1)(r)(2)).

In their response brief, the law firms allege that Tenney's conduct was not employment-related, stating that no claim is made "that Elaine was subjected to a hostile work environment."   (Response Brief, p. 20).   Yet, the Peltons assert liability against the law firms both vicariously for Tenney's conduct and for its own torts.  For vicarious liability to apply, Tenney's acts would have to be related to the conduct of the business.  Piedmont Hosp., Inc. v. Palladino, 276 Ga. 612, 613, 580 S.E.2d 215, 217 (2003) (quoting Adams, Georgia Law on Torts, p. 263, § 7-2 (2002 ed.)) (finding that vicarious liability requires "first, the servant must be in furtherance of the master's business; and second, he must be acting within the scope of his master's business.") To the extent that the Peltons seek to assert liability vicariously against the law firms, there necessarily would be an employment connection.  Likewise, for the law firm's separate torts, the Peltons must (and do) allege a connection to Elaine's employment.  In their complaint, therefore, the Peltons assert the following:

> Defendant M&T failed to enact and enforce a system by which members of the public and Defendant M&T's invitee and employees

> would be offered <u>a safe and congenial work place</u> wherein an employee or an invitee would not be concerned about a possible video surveillance camera being underneath a desk or other position and said failure to enforce policies, procedures and systems was a proximate cause of damage to Plaintiffs.

(Complaint, Exh. B., ¶ 54) (emphasis added).  By alleging that Elaine was an employee and that she was harmed by the law firms' failure to provide a "safe and congenial work place," the Peltons did articulate a "hostile work environment" claim.  Consequently, the law firms' attempt to sidestep the exclusion by contending the Peltons' claims are not related to Elaine's employment conditions carries no weight.

The law firms next contend that the policy was not intended to exclude all injuries to employees but only those enumerated in the employment-related practices exclusion.  In making this argument, the law firms wholly ignore that the policy contains an Employer's Liability exclusion that applies broadly to "'bodily injury' to:  (1) An 'employee' of the insured arising out of and in the course of:  (a) Employment by the insured; or (2) Performing duties related to the conduct of the insured's business."  (Complaint, ¶ 22 & Exhibit E, at § (B)(1)(e)).  In <u>SCI Liquidating Corp. v. Hartford Ins. Co.</u>, 272 Ga. 293, 526 S.E.2d 555 (2000), the Supreme Court analyzed the language of this exclusion as containing two separate elements; while "course of" employment refers to the "time, place and

circumstances under which the injury takes place," the phrase "arise out of" requires that the injury was "a risk of employment that a reasonable person could have foreseen due to the nature of the work."  272 Ga. at 294, 526 S.E.2d at 557. The Employment-Related Practices exclusion <u>complements</u> the Employer's Liability exclusion by excluding those claims that are in the "course" of employment whether they also arose "arise "out of" the employment.  In any event, the policy <u>was</u> intended to exclude all claims by employees.

Moreover, law firms cannot ignore that the Employer-Related Practices exclusion describes "harassment" and "humiliation" as excluded practices, and in their complaint the Peltons assert that Elaine "felt violated as a result of the discovery" of the camera and repeatedly seeks to recover for "mental pain, suffering and anguish."  (Complaint, Exh. B., ¶¶ 26, 37, 44, 46, 59).  Under the rules of construction, words in a policy "must be given their usual, ordinary and common meaning." <u>Arkin v. Firemans Fund Ins. Co.</u>, 228 Ga. App. 564, 566, 492 S.E.2d 314, 316 (1998) (citing O.C.G.A. § 13-2-2(2) and <u>Bold Corp. v. Nat'l. Union Fire Ins. Co.</u>, 216 Ga. App. 382, 383, 454 S.E.2d 582, 584 (1995)).

Viewed in this proper perspective, the complaint need not use the precise words of the exclusion for the claims to be excluded.  Ms. Pelton's allegation that she felt "violated" when she discovered the spy camera communicates the same

meaning as the terms "harassment" and "humiliation" that are indicated in the exclusion.  To hold otherwise would make a mockery of the policy construction process as crafty litigators could use synonyms to avoid unambiguous policy exclusions.  As the Supreme Court of Georgia has decreed, "we will not strain to extend coverage where none was contracted or intended."  Jefferson Ins. Co. of New York. v. Dunn, 269 Ga. 213, 316, 496 S.E.2d 696, 699 (1998).

For all these reasons, the Employment-Related Practices Exclusion would apply even if the Peltons had alleged bodily injuries caused by an occurrence.

### C.    No Coverage for "Personal and Advertising Injury"

In its opening brief, Hartford showed that there could be no coverage for the offense of "discrimination or humiliation" under the "personal and advertising injury" provisions for a number of reasons including the exclusions for expected or intended injury; for discrimination or humiliation committed by a partner; and for employment-related practices.   In their response, the law firms contend that coverage is afforded both by the "discrimination or humiliation" offense and by the offense of "invasion of the right of private occupancy."  For the reasons provided, neither provision affords coverage to the law firms.

### 1.    No Coverage for "Discrimination or Humiliation

In its opening brief, Hartford assumed for purposes of its motion the allegations fall within the offense of "[d]iscrimination or humiliation that results in injury to the feelings or reputation of a natural person."   Nevertheless, coverage is excluded under three provisions: an exclusion for   "personal and advertising injury" "arising out of discrimination or humiliation committed by or at the direction of any . . . partner or member of the Insured"; the same Employment-Related Practices exclusion described above; and the exclusion for injury arising out of an offense committed by the insured with the expectation of inflicting "personal and advertising injury."  (Complaint, ¶ 22 & Exh. E, at § B(1)(a)(1)).

The law firms admit Tenney was a partner of M&T but contend the exclusion for "discrminiation or humiliation committed by or at the direction of any . . . partner or member of the Insured" does not apply because Tenney's actions were not related to business of the law firms.  But nothing in the exclusion requires "discrimination or humiliation" to be part of the partner's role, and the law firms' attempt to engraft a requirement that discrimination or humiliation be part of the insured's business would render the exclusion meaningless.  Moreover, if the "discriminiation or humiliation" exclusion were limited to a conduct "sanctioned by the insured entity," it would be superfluous given the more specific exclusion for employment-related practices.  As the Georgia Court of Appeals has explained,

"one of the most fundamental principles of construction is that a court should, if possible, construe a contract so as not to render any of its provisions meaningless." White v. Kaminsky 271 Ga. App. 719, 722, 610 S.E.2d 542 (2004). Under the rules of construction, the exclusion for discrimination or humiliation committed by a partner applies because Tenney was a partner and his conduct is the cause-in-fact of the Peltons' claims. This is true whether or not the conduct was within the scope of his responsibilities as a partner.

To the extent that the Peltons' claims include allegations against the law firms for employment-related practices, the Employment-Related Practices would also bar coverage for the reasons discussed above.

The law firms maintain that the exclusion for an injury from an offense committed by the insured with the expectation of inflicting "personal and advertising injury" does not apply because their conduct was not intentional. It is undisputed, however, that Tenney intentionally placed the camera under Elaine's desk to spy on her – an act that would be expected to inflict injury. Because Tenney's intentional act is the "cause-in-fact" of the claimed injuries for which redress is sought against the law firms, the exclusion applies.

### 2.    No Coverage for Invasion of Right of Private Occupancy

The offense for invasion of the right of private occupancy reads as follows:

13

wrongful eviction from, wrongful entry into, or invasion of the right
of private occupancy of a room, dwelling or premises that the person
occupies, committed by or on behalf of its owner, landlord or lessor.

(Complaint, ¶ 22 & Exh. E, § G(17)(c)).  In urging this Court to find coverage

under this definition, the law firms repeatedly refer to the Peltons as claiming an

"invasion of privacy" and omit the word "occupancy."  (Response Brief, pp. 16-

17).  But read correctly, the offense requires that the claimant (1) had a "private

occupancy" right that (2) was infringed by an "owner, landlord or lessor" of the

property.  The proper inquiry is "whether [a party] has obtained a legally

enforceable <u>right</u> [to occupy the property]."  <u>Auto-Owners Ins. Co. v. Robinson</u>

2006 WL 2583356 (M.D. Ga. 2006), *4 (quoting <u>Hobbs Realty & Constr. Co. v.

Scottsdale Ins. Co.</u>, 593 S.E.2d 103, 107-08 (N.C. App. 2004)) (emphasis in

original).  The law firms do not discuss <u>Robinson</u> but instead refer to "invasion of

privacy" claims as covered, citing <u>Nationwide Mut. Fire Ins. Co. v. Somers</u>, 264

Ga. App. 421, 591 S.E.2d 430 (2003).  But as explained in Hartford's opening

brief, <u>Somers</u> is inapposite.  The law firms have shown no reason to expand a right

of "private occupancy' so as to include an employee's use of a workplace. As the

Kansas Court of Appeals has aptly stated,

> To construe private occupancy to mean a right of occupancy of
> something other than property, such as occupancy of a position of
> employment . . . would be an unauthorized perversion of the language.

Topeka Tent & Awning Co. v. The Glen Falls Ins. Co., 13 Kan. App.2d 553, 556-

57, 774 P.2d 984, 987 (1989) (emphasis added); State Farm Fire & Cas. Co. v.

Burkhardt, 96 F. Supp. 2d 1343, 1351 (M.D. Ala. 2000) (finding that claims of

sexual harassment in the workplace do not implicate identical offense and

reasoning that coverage for invading the right to occupy a "room" would not apply

outside the "tenancy situation"). Moreover, even if the "private occupancy"

offense were triggered, coverage would be excluded by the provisions discussed

above for expected personal or advertising injury and employment-related

practices. In the interests of brevity, Hartford incorporates herein its discussions

above addressing these provisions.

## CONCLUSION

The law firms seek coverage for claims arising from a former partner's

intent to spy on a former secretary of M&T. Because the claims against the law

firms are not covered by the policy's provisions, Hartford's motion for judgment

on the pleadings should be granted. See York Ins. Co. v. Houston Wellness

Center, 261 Ga. App. 854, 855, 583 S.E.2d 903 (2003) (no duty to defend or

indemnify where allegations fall within exclusion); Southern Ins. Co. v. Dowse,

278 Ga. 674, 676, 605 S.E.2d 27, 29 (2004) (finding no duty to defend or

indemnify "if the underlying claim is outside the policy's scope of coverage.").

Respectfully Submitted,

**FREEMAN MATHIS & GARY, LLP**


/s/ Philip W. Savrin_____
Philip W. Savrin
Georgia Bar No. 627836
psavrin@fmglaw.com

Attorney for Plaintiff Hartford Fire Insurance
Company

100 Galleria Parkway
Suite 1600
Atlanta, Georgia 30339-5948
T: 770-818-0000
F: 770-937-9960
L:\DOCS\5419\43835\00001984.DOC

## <u>CERTIFICATE OF FONT SIZE</u>

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing has been prepared in compliance with Local Rule 5.1(B) in Times New Roman 14 point type face.

**FREEMAN MATHIS & GARY, LLP**

\s\ Philip W. Savrin_____
Philip W. Savrin
Georgia Bar No. 627836
psavrin@fmglaw.com

Attorneys for Hartford Fire Insurance Company

100 Galleria Parkway
Suite 1600
Atlanta, Georgia  30339-5948
T – 770.818.0000
F – 770.937.9960

## CERTIFICATE OF SERVICE

I have served the foregoing **PLAINTIFF'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS AS TO MERRITT & TENNEY, LLP AND MERRITT WATSON, LLP** using the CM/ECF system which will automatically send electronic mail notification of such filing to counsel of record who are CM/ECF participants and mailed by United States Postal Service, first class, postage prepaid, a paper copy of the same document to counsel of record who are non-CM/ECF participants as follows:

Kevin J. Bahr, Esq.
MASON BAHR LLP
Two Ravinia Drive, Suite 610
Atlanta, GA  30346

Richard L. Robbins, Esq.
ROBBINS FREED LLC
999 Peachtree Street, N.E.,
Suite 1120
Atlanta, GA  30309

Anthony L. Cochran, Esq.
CHILIVIS COCHRAN LARKINS
& BEVER, LLP
3127 Maple Drive, N.E.
Atlanta, GA 30305

Allen L. Broughton, Esq.
ALLEN L. BROUGHTON, P.C.
305 West Wieuca Road, N.E.
Atlanta, GA  30342

This 20th day of January, 2010.

*s/ Philip W. Savrin*
Philip W. Savrin
Georgia Bar No. 627836
psavrin@fmglaw.com

FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway
Suite 1600
Atlanta, Georgia  30339-5948
(770) 818-0000 (telephone)

18